THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v AMELIO RINCON, Respondent.

First Department, March 3, 1992

---

**APPEARANCES OF COUNSEL**

*Lynne DeLisi* of counsel *(Kathleen E. Fay* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for appellant.

*Lawrence Fleischer* of counsel *(Daniel J. Gotlin,* attorney), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

This appeal presents the issue of whether a visitor to a courthouse impliedly consents to the search of a paper bag inside his waist pouch after he triggers the alarm of a metal detector and thereafter places the pouch on a table for the officer's inspection.

On August 17, 1989, Court Officers Rahor and Parascandolo were assigned to the security checkpoint in the lobby of the Criminal Courts Building at 100 Centre Street in Manhattan. Pursuant to the regulations of the Unified Court System, the lobby was equipped with a metal detector designed to intercept weapons and other contraband brought into the courthouse. The regulations required officers assigned to the security post to instruct those persons to be scanned to "remove all metal objects from their persons and place them in a designated container." According to the regulations, "[a]ll briefcases, handbags, knapsacks * * * [must] be opened and searched in view of the owner." A conspicuously posted lobby sign stated, "All persons entering this area must pass through a detector device and submit to personal search if warranted." Another sign on a table adjacent thereto directed those about to enter the detector to remove all metallic objects from their pockets before entering.

At approximately 3:30 that afternoon, defendant entered the courthouse and walked through the metal detector. As he passed, the detector's alarm sounded, signaling that defendant was carrying a metal object. In accordance with the security regulations, Officer Parascandolo instructed defendant to empty his pockets and to remove and open his waist pouch and place it on the adjacent table. Defendant complied and passed through the detector without triggering the alarm.

Officer Parascandolo then turned his attention to the waist pouch. Inside, using a hand wand, known as a cubaton, to probe its contents, Parascandolo found a rock, beeper and three-by-four-inch folded-down paper bag. Parascandolo removed the paper bag and asked, "what [is] in the bag", but defendant did not reply. Since weapons such as "knives", "a gun" or "razor blades", as well as "hypodermic instruments" could have fit into the bag, Parascandolo could not safely

ascertain the nature of its contents by squeezing it. Officer Parascandolo looked inside the bag and found a plastic bag containing a quantity of cocaine. Defendant was arrested.

After he was indicted on one count of criminal possession of a controlled substance in the fifth degree, defendant moved to suppress physical evidence, which included the cocaine, pouch, a rock and a beeper. A suppression hearing was held at which the foregoing facts were established. The hearing court, crediting the testimony of Officers Rahor and Parascandolo and finding that the Unified Court System regulations upon which Parascandolo relied, were appropriate, necessary and proper, upheld the cubaton search of the pouch but concluded that the search of the paper bag inside was "overbroad" and exceeded the acceptable "routine and minimal invasion into [defendant's] personal privacy." It ruled, therefore, that defendant could not be held to have consented to the search, which was not supported by either reasonable suspicion or probable cause to believe that the paper bag contained contraband. In that connection, the court also noted that other objects in defendant's possession were "[a]rguably" "probable triggers" of the detector's alarm. Accordingly, the court granted the motion to suppress. The People appeal, having certified to the insufficiency of their proof as a result of the suppression. We reverse.

The Fourth Amendment, as is well settled, protects individuals against " 'unreasonable governmental intrusion' 'wherever an individual may harbor a reasonable "expectation of privacy" ' " (People v Price, 54 NY2d 557, 561, quoting Terry v Ohio, 392 US 1, 9), not against all searches. The reasonableness of the " 'governmental intrusion' " is measured by a balancing of society's interest in protecting the public against the individual's right to be free from governmental interference. (People v Dean, 79 AD2d 555, 556.) Courts, applying this balancing test, have recognized that society's interest in protecting the public in airports and in courthouses and other government buildings is so compelling as to justify a limited search of all those seeking entry into those areas. In light of this compelling governmental interest, the interdiction against searches without probable cause or reasonable suspicion is relaxed to the extent of allowing a minimally intrusive search uniformly applied to all those seeking entry. (See, e.g., People v Price, supra, at 563 ["It is common knowledge that all airline passengers and their luggage are subject to being searched and that these searches * * * are reasonable even

when contraband is discovered in areas where a person would normally have a reasonable expectation of privacy"]; *see also, People v Luna,* 73 NY2d 173, 178 ["(R)outine detentions, inspections and questioning at the border may be conducted without any particularized justification"]; *Downing v Kunzig,* 454 F2d 1230, 1233 [regulations requiring that one seeking entry into Federal building either allow security officer to examine contents of briefcase or leave the briefcase at the door held "both reasonable and fair", given limited scope of the inspection and its function, i.e., the recovery of weapons and explosives]; *Barrett v Kunzig,* 331 F Supp 266, *cert denied* 409 US 914 [Federal courthouse security regulation requiring visual inspection of packages, proper in light of substantial governmental interest, uniform application of regulation to all entrants and notice thereof]; *McMorris v Alioto,* 567 F2d 897 [regulations applicable at State courthouses requiring visual inspection of packages held only minimally intrusive and permissible in light of entrants' implied consent and right to leave premises and avoid search at any time].) It necessarily follows that when a person with notice of such impending search seeks entry into such a restricted area, he or she relinquishes any reasonable expectation of privacy and impliedly consents to the search.

Measured against these guidelines, it is clear that Officer Parascandolo's search of defendant's bag was proper and consensual. Defendant was forewarned by two clearly posted signs that he and his possessions would be searched before he could gain entry to the courthouse. One warned him that he would be required to pass through a metal detector and undergo an additional search, "if warranted." The other instructed him to relinquish all metal objects to the custody of the court officer before proceeding through the metal detector. Defendant received an additional warning of the impending search when, after triggering the metal detector's alarm, Parascandolo told him to remove any metal object in his possession and open his waist pouch. Then, in defendant's presence, Parascandolo searched the waist pouch with the cubaton and focused on the paper bag for further examination. Any doubt left by the lobby signs that defendant's bag would be searched was unquestionably dispelled by Parascandolo's instructions to defendant and his search of the pouch, to which no objection was taken. Nor, when defendant failed to answer Parascandolo's inquiry about its contents, could there by any doubt that the officer would look inside the paper bag

and find out for himself. Despite this notice, defendant never attempted to limit or prevent Parascandolo's search.

Nor is there any suggestion in the record that defendant's implied consent to the search was in any way coerced. No one compelled defendant to seek entry to the courthouse, nor was he ever prevented from leaving the courthouse, even after he triggered the metal detector. There is no hint of any wish on his part to leave and return later rather than submit to a search of the bag. In such circumstances, defendant, in handing over his open waist pouch to Parascandolo, relinquished any reasonable expectation of privacy as to its contents and voluntarily consents to the search. In that regard, the suppression court's conclusion that defendant consented to all of Parascandolo's actions except his inspection of the contents of the paper bag is based not on anything defendant said or did but, rather, upon its erroneous conclusion that the search was "overbroad" and "non-routine".

In fact, the evidence shows that the search was routine and only minimally intrusive. Nothing suggests that as to others Parascandolo ignored the Unified Court System regulations directing a "search" of all bags and packages and arbitrarily selected defendant for the search. Nor was Parascandolo required, as the suppression court suggested, to determine whether there was anything suspicious about the bag before he opened it. That other objects in defendant's possession were "[a]rguably" the "probable triggers" of the alarm furnished no reason for Parascandolo to depart from standard procedure and permit defendant to enter the courthouse with a bag that, according to Parascandolo, may well have contained a weapon. Furthermore, as the record demonstrates, Parascandolo used the least intrusive means available to ensure that defendant was not concealing a weapon. He gave defendant an opportunity to describe the bag's contents before opening it.

In concluding that Parascandolo, even in the face of defendant's failure to respond to his inquiry, should have limited his search of the bag to the external probing with the cubaton, the suppression court ignored the record. Such probing with the cubaton, which was used only to protect the searching officer from "sharp instruments", would not reasonably be expected to disclose whether razor blades or other weapons were present, as Parascandolo believed might be the case, and would only frustrate the security regulations' purpose.

In sum, Parascandolo's search complied with the Uniform

Court System regulations, which as the record discloses, were uniformly applied to all prospective entrants, who, by two conspicuously posted signs, were given notice of the impending search. By seeking entry to the courthouse and voluntarily relinquishing his opened waist pouch, defendant impliedly consented to the ensuing search, which was reasonably limited in scope. Since defendant never attempted to revoke his consent or limit the search, the cocaine and other property should not have been suppressed.

Accordingly, the order of the Supreme Court, New York County (Patricia Anne Williams, J.), entered April 3, 1990, which granted defendant's motion to suppress physical evidence, should be reversed, on the law, and the motion denied.

ROSENBERGER, WALLACH, ROSS and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered April 3, 1990, is reversed, on the law, and defendant's motion to suppress evidence denied.