OPINION OF THE COURT
Robert E. Whalen, J.
Petitioner, Alan J. Bozer, Esq., an attorney admitted to practice in the courts of the State of New York, brings this CPLR article 78 proceeding and seeks (1) to restrain and enjoin the respondents from limiting, restricting or prohibiting free attendance of the public sittings of the court in Erie County Hall, Buffalo, New York, (2) to determine that current magnetometer searches are unconstitutional and contrary to the Judiciary Law, (3) to declare that the relevant policies of the respondent Office of Court Administration (OCA) are unconstitutional and violative of the State law and (4) an award of costs, expenses and reasonable attorney’s fees.
Respondents Higgins and OCA oppose said petition and seek an award of costs, expenses and reasonable attorney’s fees.
background:
Erie County Hall in Buffalo, New York, houses Family, County, Surrogate’s and Supreme Court’s criminal, civil and matrimonial parts. In December 1988, walk-through metal detectors (magnetometers) were installed at the two building entrances at the request and direction of the Administrative Judge for the Eighth Judicial District. Magnetometers had previously been installed in various New York City courts as early as 1985.
The decision to place magnetometers in Erie County Hall was based upon evidence that courtrooms, especially Family and Supreme Courts handling matrimonial and related actions, have an increased potential for violence. Also, there existed a lack of security and increased threats made against Judges.
According to OCA Rules and Procedures Manual § 2.60 *162 (Security Posts), the procedure for persons entering the building is as follows. All persons wishing to enter a court facility are requested to remove all metal objects from their pockets and pass through the magnetometer. In addition, any package or bag is opened in view of the owner and searched for weapons. If the magnetometer gives a positive reading the individual is requested to further look for metal objects and passes through the magnetometer a second time. If a positive reading continues, then the individual is searched with a hand scanner until the metal objects are discovered. At any time during the entire process a person may terminate the search, collect his or her belongings and leave Erie County Hall. Since 1991 alone, over 12,000 weapons have been discovered including firearms, knives and razors using this procedure at Erie County Hall.
Building employees and those with official identification are permitted to bypass the metal detector security clerk. Attorneys licensed to practice in New York courts may obtain an official identification card, thereby permitting the attorney to bypass the magnetometers and briefcase security checks.
the incident:
Petitioner’s verified affidavit of August 24, 1992, states that on August 20, 1992 at 10:30 a.m. he went to Erie County Hall for the purpose of a sitting of the Erie County Court.
Upon his arrival at the building he proceeded through the metal detector. However, he objected to the opening of his briefcase by the Deputy Sheriff at the security station. The petitioner was informed that the procedures required the officer to inspect the inside of the briefcase. Petitioner refused to allow the inspection, as was his right, and voluntarily left the building.
Subsequently he returned without his briefcase and was granted entrance after passing through the metal detector as he previously had done.
Thereafter, petitioner brought this article 78 proceeding.
Petitioner cites three reasons why his petition should be granted. Each will be addressed below.
(1) Petitioner asserts that respondents have no grant of authority from the New York State Legislature to promulgate the security policy. He relies on Boreali v Axelrod (71 NY2d 1 [1987]), Criminal Procedure Law § 140.50 and Judiciary Law § 212 (1).
*163 In this assertion, petitioner entirely misapprehends the constitutional structure of the State of New York. Very clearly article VI of the New York Constitution details the judiciary as a separate independent branch of State government. Section 28 of that article empowers the administrative supervision of the courts to the Administrative Board, comprised of the Chief Judge of the Court of Appeals, as Chairman, and the Presiding Justice of the Appellate Division of the Supreme Court of each judicial department.
The Chief Judge upon the advice and consent of the Administrative Board appoints a Chief Administrator who serves at the pleasure of the Chief Judge. Nowhere in article VI are any powers granted to the Executive or Legislature over the administration of the Unified Court System.
Indeed Judiciary Law § 212 (1) relied upon by petitioner reinforces this constitutional scheme. Therein, the Chief Administrator "on behalf of the chief judge, shall supervise the administration and operation of the unified court system.” Those duties and powers are exercised by the Chief Administrator "in accordance with such standards and administrative policies as may be promulgated pursuant to section twenty-eight of article six of the constitution”.
Further, this broad constitutional authority cannot be overturned or undermined by a narrow interpretation of the Criminal Procedure Law statute on warrantless arrests. CPL 140.50 relied upon by the petitioner extends to police officers the authority "to make a limited intrusion upon the liberty of persons in public places for investigative purposes, when the attendant circumstances provide an articulable basis to suspect involvement in criminal activity, even though there is insufficient basis for reasonable cause to arrest.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 140.50, at 571.)
Petitioner’s interpretation that this statutory subsection is the entire legal universe on the question blatantly ignores article XIX of the NY Constitution. The Legislature did not amend the Constitution as petitioner’s argument presupposes.
Finally, Boreali v Axelrod (71 NY2d 1 [1987], supra) cited by the petitioner concerns the Public Health Council. This is an administrative agency, created by the Legislature with a specifically defined function and narrow grant of authority. The holding in that case is irrelevant to petitioner’s request in the issue before this court.
*164 (2) Petitioner’s second reason relied upon is that Judiciary Law § 4 calls for sittings of courts to be public and that case law provides for courts to be held in public buildings.
That statute does provide for certain limitations to the public sittings of courts. While none is applicable here, petitioner’s memorandum of law to the court would have one believe "that no limitation or restraint be placed on attendance”.
Beyond this, petitioner’s own affidavit recites the fact that he attended a public sitting of Erie County Court on the day in question. Nowhere does he allege that court proceedings were closed to the public or held in secret. His reliance on Matter of Herald Co. v Weisenberg (89 AD2d 224 [4th Dept 1982]) is misplaced. That case concerns an Administrative Law Judge’s holding an unemployment claim hearing in a closed proceeding without a compelling reason.
Petitioner also relies on cases that factually are too dissimilar to the case at bar to be of any use. In People v Schoonmaker (65 Misc 2d 393 [Greene County 1971]), the court found that a Town Justice holding an impromptu sitting of the court in a police barracks at 6:30 a.m. in a different and noncontiguous county was a violation of Judiciary Law § 4. In People v Rose (82 Misc 2d 429), the Rockland County Court found that holding an arraignment and trial in a classroom of a religious school for girls did not comport with the requirement that court sessions be held in a public building.
In Bowles v State of New York (186 Misc 295), the Court of Claims held that a public building had to be kept reasonably safe for public use, and that the State could be sued in a slip and fall case occurring in a court building.
(3) Petitioner’s third reason is that the practice violates article I of the New York Constitution, and the First, Fourth and Fourteenth Amendments of the United States Constitution.
Under Federal case law, magnetometer searches at Federal buildings have been found to be constitutionally permissible for 20 years. (See, Barrnett v Kunzig, 331 F Supp 266 [MD Tenn 1971], cert denied 409 US 914 [1972]) and Downing v Kunzig, 454 F2d 1230 [6th Cir 1972].) These cases rely upon the premise that the Government’s substantial interest in maintaining the safety of Federal buildings for those persons enjoying their use, outweighs the personal inconvenience to individuals undergoing the minimally intrusive magnetometer search.
*165 Similarly, the Federal courts have upheld magnetometer searches at State and local courthouses for almost 15 years. McMorris v Alioto (567 F2d 897 [9th Cir 1978]) presents a similar fact pattern confronting this court.
There an attorney was required to pass through a magnetometer prior to gaining entry to the Hall of Justice in San Francisco, California. He objected on Fourth and Fourteenth Amendment grounds. The court found that the threat of potential violence procured a justifiable State interest in warrantless searches using magnetometers and inspecting briefcases and parcels (McMorris v Alioto, supra, at 899.)
"Although an attorney’s consent to a search is exacted as the price of entering the courthouse to discharge duties necessary to his profession, the search is nevertheless consensual in the same way as the airport search cases” (McMorris v Alioto, supra, at 901).
A more recent Federal case reads similarly to petitioner’s "John Justice went to the Richard J. Daley Civic Center, in Chicago, to file a pleading in a Cook County circuit court. He was told by sheriffs police that he couldn’t enter the building without being searched. He refused to agree to this indignity, and went away. He then brought this suit against the sheriff, the chief judge of the circuit court, and other officials, claiming that to condition his right to enter the building on his consenting to be searched violated his constitutional rights”. (Justice v Elrod, 832 F2d 1048, 1049 [7th Cir 1987].) That court reaffirmed the reasonableness of the procedure and dismissed the action on other grounds.
Most recently and on point, the Federal courts have held that OCA’s magnetometer search was reasonable under the Fourth Amendment, in Legal Aid Socy. v Crosson (784 F Supp 1127 [SD NY 1992]).
There the court employed a balance of constitutional rights test. "To make this determination here, we must balance the nature and quality of the magnetometer search against the need for the search to further the governmental interest involved, here the protection of judicial officers and visitors to Family Court” (Legal Aid Socy. v Crosson, supra, at 1130).
In upholding the magnetometer search the court noted, "[t]he need to protect Family Courts from the very real potential for violent incidents more than justifies the use of magnetometers. The emotional stresses of divorce proceedings, custody fights, incidents of child abuse, domestic violence, and *166 criminal sentencings for minors are fertile ground for violent incidents in family court” (Legal Aid Socy. v Crosson, supra, at 1130).
While the Federal case law is well developed in this area, New York State’s is nascent. In People v Rincon (177 AD2d 125 [1st Dept 1992]), the Court addressed the issue of suppressing evidence obtained during a courthouse magnetometer search. That Court citing People v Dean (79 AD2d 555) and People v Price (54 NY2d 557) applied the applicable balancing of interest test and found "In light of this compelling governmental interest, the interdiction against searches without probable cause or reasonable suspicion is relaxed to the extent of allowing a minimally intrusive search uniformly applied to all those seeking entry.” (People v Rincon, supra, at 127.)
Here, just as in Rincon (supra), those entering the building are forewarned by clearly posted signs, the magnetometer search is uniformly applied to prospective entrants, is minimally intrusive and may be terminated at will by the entrant. To this extent then, the search is consented to by the entrant.
Nowhere does the petitioner cite a single instance of a bar to people’s right to petition their government or to assemble.
Even Mr. Bozer admits in his affidavit that he attended court sittings and has continued to attend those sittings. This is no violation of article I, § 9 of the New York Constitution.
Petitioner further cites cases to support his final contention that the magnetometer searches are violative of the New York Constitution, article I, § 12’s prohibition of unreasonable searches and seizures.
However, all of the cases cited are clearly distinguishable from the case at bar. He cites cases of automobile stops and street searches by police officers. Indeed in one of his cited cases, People v Finlayson (76 AD2d 670 [2d Dept 1980]), a warrantless detention and search by police at gunpoint was upheld as being reasonable.
This court takes judicial notice that during deliberation on this petition, family support collection unit workers in Watkins Glen, New York, were killed at gunpoint by a man angered over child support payments. Indeed, the very day of petitioner’s oral argument, the national news media carried reports of a killing in Family Court. This court takes further judicial notice that threats against Judges occur in Western New York.
Based upon the foregoing this court finds the use of magne *167 tometers at the court buildings as reasonable searches to which entrants give their implied consent.
Beyond the foregoing which permits this court to dismiss the petition on the substantive merits, the doctrine of loches applies. These magnetometers have been in place for almost four years. Mr. Bozer and members of his law firm have seen their operation thousands of times during that period. Petitioner’s concerns should have been addressed in 1988; not in 1992.
Further, this action was brought by petitioner through his law firm, an established firm in Buffalo, New York. Of concern to this court is the fact that no case was cited by petitioner, either Federal or State, that concerned this issue. The prosecution of this action by the law firm after four years and without a real client or petitioner was troubling to this court. To ignore the real violence and the threat of violence in courtrooms today is difficult to comprehend. These procedures protect not only the judiciary and court personnel, but members of the Bar and the general public alike.
Therefore, this court finds pursuant to 22 NYCRR 130-1.1 that this is completely without merit in law or fact and is a frivolous lawsuit. There was no bar to the courtroom and the petitioner and his law firm did not comment upon a single one of the many Federal or New York State cases regarding magnetometer searches in courtrooms and buildings. Therefore, this court further orders that sanctions in the amount of $500 against petitioner and $1,000 against petitioner’s law firm to be paid to the Clients’ Security Fund.
Further, respondents are hereby awarded reasonable costs and attorneys’ fees, to be determined upon the court’s review of attorneys’ affidavits of time.