The STATE of Ohio, Appellant,

v.

BOOK, Appellee.

[Cite as *State v. Book,* 165 Ohio App.3d 511, 2006-Ohio-1102.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 05CA2831.

Decided March 8, 2006.

512

Scott W. Nusbaum, Ross County Prosecuting Attorney, and Sherri K. Rutherford, Assistant Prosecuting Attorney, for appellant.

David H. Bodiker, Ohio Public Defender, and Lori J. Rankin, Assistant Public Defender, for appellee.

KLINE, Judge.

{¶ 1} The state of Ohio appeals the Ross County Common Pleas Court's judgment in favor of John O. Book regarding his motion to suppress methamphetamines. A courthouse security officer found these drugs on Book during a security screening after a magnetometer activated. The trial court found that the administrative search for the drugs "went beyond the scope of a search for weapons." The state argues that the trial court erred because the officer properly searched for drugs and weapons. Because we find that the search for drugs and weapons comports with the administrative purpose of ensuring the safety of everyone inside the courthouse, we agree with the state. However, because the officer discriminately conducted the screening, this type of administrative search does not comply with the "reasonable" clause of the Fourth Amendment to the United States Constitution. Thus, we find, albeit for a reason different from that of the trial court, that the search of Book was invalid. Accordingly, we affirm the judgment of the trial court.

I

{¶ 2} Larry William Throckmorton is a security officer for the Chillicothe Municipal Court. He testified at the suppression hearing that one of his duties is to search anyone entering the courthouse for "weapons, contraband, stuff of that nature" for the purpose of ensuring "the safety of the employees and staff." He conducts these administrative searches by having the people entering the courthouse walk through a magnetometer, and if it activates, he does a further search with a handheld device and/or pat-down. However, he admitted that, as a professional courtesy, he does not screen certain people that he knows.

{¶ 3} Book entered the municipal courthouse. He may or may not have seen a sign that read, "ALL PERSONS ENTERING THE COURT FACILITY ARE SUBJECT TO SECURITY SCREENING FOR DRUGS OR WEAPONS AND/OR SEARCH OF ANY PARCELS OR LARGE OBJECTS. ANY PERSON REFUSING SCREENING WILL BE DENIED ACCESS TO THE COURT BUILDING."

{¶ 4} Book walked the 12 feet to the magnetometer and passed through it. The alarm activated. As Officer Throckmorton used his handheld device, he noticed a bulge in Book's left front pocket. The officer asked him to remove it. Book was reluctant to do so, but he eventually pulled out a medicine container without a prescription label on it. It was two inches long and one inch wide. The officer did not think that it contained a gun or a knife. He also did not think that it contained pills. Instead, he saw a dark shadow with some type of movement inside the container.

{¶ 5} The officer instructed Book to hand him the bottle. Book refused. The officer grabbed Book's arm, and Book attempted to pull away. During a slight struggle, the officer was distracted from behind. Book removed the contents of the bottle and raised them toward his mouth. Other security officers intervened and subdued and arrested Book. The medicine bottle contained methamphetamines.

{¶ 6} The Ross County grand jury indicted Book for (1) aggravated possession of drugs in violation of R.C. 2925.11, (2) tampering with evidence in violation of R.C. 2921.12, and (3) illegal assembly/manufacturing of drugs in violation of R.C. 2925.041. Book filed a motion to suppress the methamphetamines. The trial court granted the motion because it found that the "search went beyond the scope of a search for weapons." The court found that the search was proper until the officer requested that Book hand the container to him. The court stated, "There was no particular reason to think the search of the medicine bottle would produce a weapon or any other destructive device."

{¶ 7} The state appeals and raises the following assignment of error: "The trial court erred in granting the motion to suppress."

## II

{¶ 8} In its sole assignment of error, the state argues that the trial court erred when it sustained Book's motion to suppress. The state maintains that the security officer has the authority to search for drugs in addition to weapons.

{¶ 9} Our review of a decision on a motion to suppress presents mixed questions of law and fact. *State v. Hatfield* (Mar. 11, 1999), Ross App. No. 98CA2426, 1999 WL 158472, citing *State v. McNamara* (Dec. 23, 1997), Athens App. No. 97CA16, 707 N.E.2d 539, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988. Accordingly, we must uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. We then conduct a de novo review of the trial court's application of the law to the facts. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.

{¶ 10} The Fourth Amendment to the Constitution of the United States and Section 14, Article I of the Ohio Constitution protect persons from unreasonable searches and seizures conducted by the state. If a search or seizure is not conducted pursuant to a judicial warrant, then it is unreasonable per se. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. A court must suppress evidence obtained without a warrant in a criminal prosecution unless the state is able to establish an exception to the warrant requirement.

{¶ 11} An administrative search is an exception to the warrant requirement but is not an exception to the "reasonable" requirement of the Fourth Amendment. The administrative search satisfies the reasonable requirement if it complies with a three-prong test. *United States v. Davis* (C.A.9, 1973), 482 F.2d 893. "First, it must have a valid administrative purpose. Second, the method employed must be as limited in its intrusiveness as is consistent with satisfaction of the administrative purpose. Third, and in order to demonstrate that the purpose of the search is not to detect violations of law, persons potentially subject to it must have an available alternative to avoid the search by not proceeding on the course for which the search is required." *State v. Lindamood* (Mar. 28, 1997), Montgomery App. No. 16105, 1997 WL 165428, citing *Davis*. If the administrative search meets the three-prong test, it is valid even if the seizure of weapons or contraband leads to a criminal prosecution. Id.

{¶ 12} We now examine the first prong of the test involving the "reasonable" standard of the Fourth Amendment. To do so, we must consider the essential purpose of court-security screenings.

{¶ 13} The essential purpose of court-security screenings conducted pursuant to the court-security standards promulgated by the Ohio Supreme Court is to provide "safe and secure" court facilities "for all those who visit and work there." Supreme Court Security Standards Preamble. The Supreme Court of Ohio/Judicial Conference Committee on Court Security "recognizes * * * that courts deal with emotional issues." Id. Even though court security screenings may lead to criminal prosecutions involving weapons (see Supreme Court Security Standard 5) and contraband (see Supreme Court Security Standard 12 and the "Incident Report Fact Sheet"), "[t]his practical consequence does not alter the essentially administrative nature of the screening process, however, or render the searches unconstitutional." *Davis* at 908.

{¶ 14} Here, the administrative search of Book and others had the purpose of ensuring the safety of all persons that work in, or visit, the Chillicothe Municipal Court. Specifically, the security officer testified that he checks "the people that enter the Courthouse, just for the safety of the employees and staff." However, we can infer that a visitor would also benefit from this stated purpose.

{¶ 15} The evidence further shows that all persons entering the courthouse were notified by a sign that they were "SUBJECT TO SECURITY SCREENING FOR DRUGS OR WEAPONS AND/OR SEARCH OF ANY PARCELS OR LARGE OBJECTS." We find that this type of security screening is consistent with the overall purpose of providing safety to those who work in, or visit, the court. But, see, *United States v. Bulacan* (C.A.9, 1998), 156 F.3d 963 (holding that a court officer could search for weapons but not drugs). The reason that a security officer can search for drugs, in addition to weapons, is because of the

stated purpose of the search—i.e., to provide for the safety of the employees and visitors. The presence of illegal drugs can jeopardize the safety of anyone in the courthouse. However, our analysis involving the first prong does not stop here.

■ {¶ 16} Under the first prong, the state must carry out the administrative purpose uniformly—i.e., objectively instead of subjectively. *Lindamood,* Montgomery App. No. 16105, 1997 WL 165428, at 4 ("The unreasonableness of discriminate searches is that the decision to conduct them is not determined by some objective rule, but instead is surrendered to the officer who elects when to perform them"). Stated differently, this uniform or objective approach means that the state must not let the screening officer pick and choose whom to search.

{¶ 17} Here, we find that the screenings carried out in the Chillicothe Municipal Courthouse were not uniformly applied. The officer testified that he did not screen everyone who entered the courthouse. He stated that, as a professional courtesy, he does not screen attorneys, judges, and the secretarial staff of attorneys when he has known these individuals for a long time. We hold that this application of the Chillicothe Courthouse security screenings is not carried out uniformly as required by prong one of the "reasonableness" test. The security officer determines whom to search based on how long he has known the people. Therefore, the decision to conduct the search is not determined by some objective rule, as required by *Lindamood.* Consequently, this type of arbitrary security screening is not valid or reasonable under the Fourth Amendment.

{¶ 18} We are not saying that certain categories of people cannot be exempted from the security screening. However, if a certain category is exempted from the screening, then the exemption must be by objective rule. For example, a number of cases permit the exemption of certain categories of people. See *Downing v. Kunzig* (C.A.6, 1972), 454 F.2d 1230, 1232 (federal employees of the building were issued an identification card that permitted them to bypass the screening, and attorneys could show their bar card to gain unrestricted entrance to the building); *Bozer v. Higgins* (1992), 157 Misc.2d 160, 596 N.Y.S.2d 634 (building employees and those with official identification were permitted to bypass the magnetometer, and attorneys could obtain an official identification that permitted them to bypass the magnetometer); *McMorris v. Alioto* (C.A.9, 1978), 567 F.2d 897, 899 (Hall of Justice employees and peace officers were not required to pass through the magnetometer); *Barrett v. Kunzig* (M.D.Tenn. 1971), 331 F.Supp. 266, 270 (building employees were permitted to bypass the inspection station). However, the "selective screening" in the above cases differs from that at issue here. In the cited cases, all employees and/or attorneys were permitted to bypass the security screening. In some of the cases, the people permitted to bypass the screening possess special identification cards. Thus, the decision as to the categories of people who are exempted from the screening is

set by objective rule. Here, the Chillicothe Municipal Court Security Officer has discretion to decide whom he will screen.

{¶ 19} Moreover, while allowing exemptions for certain categories of people complies with the Fourth Amendment, these exemptions seem to contradict Supreme Court Security Standard 3, which states: "All persons entering the court facility, including elected officials, court personnel, attorneys, law enforcement, and security officers, *should* be subject to security screening." (Emphasis added.) The commentary accompanying Security Standard 3 explains: "The credibility of court facility security requires all persons to be subject to security screening. Any exemption of personnel from the screening process, including elected officials, court personnel, attorneys, law enforcement or security officers, will unnecessarily degrade the security of the court facility. Once exceptions are made, the opportunity for breaches of security increase[s]."

{¶ 20} Here, we find that Supreme Court Security Standard 3 is directory in nature and not mandatory. Security Standard 3 uses the word "should" instead of the word "shall." See, e.g., *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 2005 WL 3299913, at ¶ 23 (The word "shall" in a statute construed as mandatory); *Ramby v. Ping* (Apr. 5, 1996), Greene App. Nos. 95–CA–92 and 91–CV–186, 1996 WL 156886 (The use of the word "should" suggests that this provision is directory, rather than mandatory). Security Standard 3 provides that all persons "should" be screened. In addition, even if Security Standard 3 used the word "shall," our analysis would not change because the preamble to the Court Security Standards provides, "These standards are not mandates. Rather, they are goals to which the courts should aspire to ensure safe access to all." Thus, all of the Security Standards are "directory" in nature. While Security Standard 3 is ideal, some counties simply do not have the resources to comply with it. Consequently, we conclude that exemptions to security searches do not violate Security Standard 3, but still must comply with the Fourth Amendment.

{¶ 21} We do not address the second and third prongs of the "reasonable" test because those issues are now moot.

{¶ 22} Accordingly, we overrule the state's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

ABELE, J., concurs.

HARSHA, P.J., dissents.