DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment of conviction and sentence. A jury found William S. Sowards, defendant below and appellant herein, guilty of drug possession in violation of R.C. 2925.11(A). Appellant assigns the following errors for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE WHERE DEFENDANT WAS QUESTIONED AFTER ARREST, BUT WITHOUT BEING GIVEN HIS MIRANDA WARNINGS." *Page 2 
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS EVIDENCE DISCOVERED DURING THE WARRANTLESS SEARCH OF APPELLANT'S PREMISES."
 {¶ 2} In October 2005, appellant began serving a community control sanction imposed for "driving under suspension." The terms of probation required, inter alia, that appellant not violate state law and not possess any illegal drug. Appellant further agreed, as part of the terms of his probation, that he would "submit to a search of [his] person, vehicle or place of residence by any community control officer or law enforcement officer with or without probable cause while on community control."
 {¶ 3} On January 24, 2006, Trooper Nicholas Johnson observed appellant's vehicle touch the white edge line and the yellow centerline. Trooper Johnson recognized appellant's vehicle from prior contacts and suspected that appellant might be driving with a suspended license. After Trooper Johnson confirmed that appellant did not possess a valid license, he placed him under arrest. As he prepared to conduct a pat-down search, Trooper Johnson first asked appellant if he had marijuana or paraphaenlia on his person. Appellant surrendered a small bag of marijuana. Trooper Johnson also found other drugs in appellant's pockets. Later, Trooper Johnson asked appellant if he possessed any guns or knives. Trooper Johnson then called for back-up, including appellant's probation officer, to help him conduct a "probation *Page 3 
search" at appellant's home. During the search officers found fifty-three (53) pounds of marijuana stored in an outbuilding and forty-nine (49) firearms that appellant stashed at various locations throughout his home. The Gallia County Grand Jury then returned an indictment charging appellant with the possession of marijuana in violation of R.C. 2925.11(A), possession of cocaine in violation of R.C.2925.11(A), and having weapons while under a disability in violation of R.C. 2923.13(A)(3). Appellant pled not guilty to all offenses.
 {¶ 4} Subsequently, appellant filed a motion to suppress evidence and argued that (1) Trooper Johnson's initial stop of his vehicle was unlawful, (2) Trooper Johnson failed to inform him of hisMiranda rights prior to asking if he possessed anything illegal, and (3) the "probation search" of his home was unconstitutional. At the motion hearing Trooper Johnson testified about the vehicle stop, the search of appellant's person and the search of appellant's home. Gallipolis Municipal Court Chief Probation Officer Michael Smith also explained the significance of the 2005 community control documents and his role in the "probation search" of appellant's home.
 {¶ 5} After hearing the evidence and counsels' arguments, the trial court overruled appellant's motion. In so doing, the trial court issued a lengthy and thoughtful decision that thoroughly explained its rationale. The court found sufficient reasonable suspicion for the initial stop of appellant's vehicle in view of Trooper Johnson's personal knowledge of appellant and his knowledge that appellant might not possess a valid driver's *Page 4 
license. The Miranda issue was more problematic, however. As the trial court noted, it is uncontroverted that appellant did not receiveMiranda warnings prior to Trooper Johnson's question about contraband. Nevertheless, in balancing the totality of the circumstances, the trial court reasoned that this encounter was not a typical custodial interrogation and that appellant voluntarily disclosed that he possessed marijuana.[1]
 {¶ 6} The trial court also found no constitutional infirmities with the "probation search" of appellant's home. Provisions of this sort are constitutional, the court noted, and probationers do not enjoy the same liberty interests as non-probationers. Appellant's objection to the absence of language in the community control documents that such a search could be conducted without a warrant also did not sway the court. Noting that the provision explicitly stated that probation searches can be conducted "with or without probable cause," the trial court opined that language concerning a warrant is superfluous because, by definition, a search without probable cause is a warrantless search.
 {¶ 7} At the conclusion of the trial, the jury found appellant guilty of marijuana possession, but not guilty on the cocaine possession and firearm charges. The trial court *Page 5 
sentenced appellant to serve eight years in prison. This appeal followed.
 I {¶ 8} Because both assignments of error assert that the trial court erred by overruling appellant's motion to suppress evidence, we begin our analysis by delineating our standard of review. It is well-settled that appellate review of a trial court decision on a motion to suppress evidence involves mixed questions of law and fact. See State v.Book, 165 Ohio App.3d 511, 847 N.E.2d 52, 2006-Ohio-1102, at ¶ 9;State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1. In deciding a motion to suppress, trial courts assume the role of trier of fact and are in the best position to resolve factual disputes and to evaluate witnesses credibility. State v. Burnside, 100 Ohio St.3d 152,797 N.E.2d 71, 2003-Ohio-5372, at ¶ 8. Appellate courts will generally accept a trial court's factual finding if competent and credible evidence supports that finding. State v. Metcalf (1996),111 Ohio App.3d 142, 145, 675 N.E.2d 1268. However, appellate courts review de novo a trial court's application of the law to those facts. Book, supra at ¶ 9; State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. With this standard in mind, we turn to appellant's assignments of error.
 II {¶ 9} Appellant's first assignment of error asserts that the trial court erred with respect to the Miranda issue. The evidence adduced at the hearing reveals that Trooper Johnson did not inform appellant of hisMiranda rights. Rather, Trooper *Page 6 
Robert Jacks read appellant his rights during the search of his home. Appellant argues that his admission to Trooper Johnson's question, asked during the initial stop, about contraband in appellant's possession without first being advised of his Miranda rights, must be suppressed along with all evidence subsequently seized from his home. We disagree with appellant, albeit for reasons different from the trial court's analysis.
 {¶ 10} Before we turn to the merits of appellant's argument, we first note that this issue would not arise if arrestees are informed of theirMiranda rights at the time of arrest. As the late Chief Justice Rehnquist noted, Miranda rights have "become embedded in routine police practice to the point where the warnings have become part of our national culture." See Dickerson v. United States (2000), 530 U.S. 428,443, 120 S.Ct. 2326, 147 L.Ed.2d 405. An arrestee must be informed of their Miranda rights before questioning can occur. Although no rule requires that an arrestee be read his Miranda immediately after his arrest, seemingly innocuous questioning may later be determined to constitute a custodial interrogation and a violation of the suspect's constitutional guarantees.
 {¶ 11} In the case at bar, appellant's first assignment of error requires us to answer two pivotal questions. First, did Trooper Johnson's question about contraband, asked prior to advising appellant of his Miranda rights, violate appellant's Fifth Amendment rights? Second, if the failure to advise appellant of his Miranda rights constitutes a constitutional violation, does that violation require the suppression of the *Page 7 
evidence seized at appellant's home? For the following reasons, we answer the first question in the affirmative and the second in the negative.
 {¶ 12} The Fifth Amendment to the United States Constitution guarantees that no person shall be compelled to be a witness against himself. This safeguard is applicable to the states through theFourteenth Amendment Due Process Clause, see Carter v. Kentucky (1981),450 U.S. 288, 305, 101 S.Ct. 1112, 67 L.Ed.2d 241; Malloy v. Hogan
(1964), 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653. Also, similar protections are afforded residents of this state under Section 10, Article I, Ohio Constitution. State v. Baker (Nov. 1, 1995), Athens App. No. 94CA1644, unreported.
 {¶ 13} The United States Supreme Court has determined that prior to a custodial interrogation, a suspect must be warned that he has the right to remain silent, that any statement can be used as evidence against him, and that he has the right to have an attorney present during questioning. Miranda v. Arizona (1966), 384 U.S. 436, 444,86 S.Ct. 1602, 16 L.Ed.2d 694. The event that generally triggers a need to give the Miranda warnings is a "custodial interrogation." See Berkemer v.McCarty (1984), 468 U.S. 420, 434, 104 S.Ct. 3138, 82 L.Ed.2d 317;State v. Buchholz (1984), 11 Ohio St.3d 24, 28, 462 N.E.2d 1222. Thus, a formal arrest or some equivalent restraint on a suspect's freedom of movement must have occurred. See State v. Neely, 161 Ohio App.3d 99,829 N.E.2d 718, 2005-Ohio-2342, at ¶ 26; State v. Vega-Bonilla (Dec. 23, 1996), Washington App. No. 96CA7. *Page 8 
 {¶ 14} Typically, courts reviewing Miranda cases are called to determine whether a detention short of formal arrest rises to the level of a "custodial interrogation." In the instant case, however, the officers arrested appellant before he was questioned. The trial court concluded that appellant voluntarily responded to the officer's question and that the custodial setting was less coercive than normal interrogations. We, however, disagree with the trial court concerning these factors.
In State v. Farris, 109 Ohio St.3d 519, 849 N.E.2d 985,2006-Ohio-3255, at ¶¶ 7, 36-37, the Ohio Supreme Court held that even voluntary statements made without Miranda warnings are inadmissible. Second, an "interrogation" for purposes of Miranda means any words or actions on the part of the police (other than those normally attendant to arrest and custody) that police should know are reasonably likely to elicit an incriminating response. Rhode Island v. Innis (1980),446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297; State v. Knuckles (1992),65 Ohio St.3d 494, 496, 605 N.E.2d 54. Here, when the officer asked appellant if he "had anything" on his person, the officer intended to elicit an incriminating response. Finally, Miranda and its progeny provide a bright line rule. Arrestees must be informed of theirMiranda rights prior to questioning that is reasonably intended to elicit an incriminating response. To require courts to determine whether the circumstances involved in one custodial interrogation are more, or less, coercive than the circumstances present in other custodial interrogation settings will cloud the application of the rule. *Page 9 
 {¶ 15} For these reasons, we respectfully disagree with the trial court's conclusion that Miranda warnings were not necessary under the circumstances in the case sub judice. Thus, appellant's admission concerning the bag of marijuana must be suppressed. The more important question, however, is whether the bag of marijuana and the marijuana seized at appellant's residence must be suppressed. If we looked solely to the federal constitution, the answer is no. The Fifth Amendment self-incrimination clause is not violated by the introduction of non-testimonial evidence obtained as a result of voluntary statements.United States v. Patane (2004), 542 U.S. 630, 637, 124 S.Ct. 2620,159 L.Ed.2d 667; Missouri v. Seibert (2004), 542 U.S. 600, 619,124 S.Ct. 2601, 159 L.Ed.2d 643. Thus, Miranda does not mandate the suppression of the physical fruits of an unwarned, but voluntary, statement.Patane, supra at 633-634; also see State v. Coston, 168 Ohio App.3d 278,859 N.E.2d 990, 2006-Ohio-3961, at ¶ 16.
 {¶ 16} The issue is more complicated, however, under the Ohio Constitution. Although Article I, Section 10, of the Ohio Constitution is analogous to the Fifth Amendment of the United States Constitution, the Ohio Supreme Court held that the Ohio Constitution provides more protection than the Fifth Amendment. Farris, 2006-Ohio-3255, at ¶ 48. Indeed, the Ohio Supreme Court has held that the Ohio Constitution requires that physical evidence obtained in violation ofMiranda must be excluded from evidence. Id. at ¶¶ 48-49; also seeState v. Oliver, *Page 10 112 Ohio St.3d 447, 860 N.E.2d 1002, 2007-Ohio-372, at ¶ 17 (Pfeifer, J. Dissenting).
 {¶ 17} Appellant argues that under Farris, the marijuana found on his person, as well as the marijuana found at his home, must be suppressed. The trial court reasoned that Farris does not apply because it is factually distinguishable from the case at bar. We agree with the trial court on this point.
 {¶ 18} After holding that Article I, Section 10 of the Ohio Constitution provides greater protection than the Fifth Amendment, the Ohio Supreme Court considered whether evidence could be admitted under the "automobile exception" to the search warrant requirement.Farris, supra at ¶¶ 50-52. Although the Farris Court ultimately concluded that the "automobile exception" did not apply, the fact that it engaged in that analysis indicates that physical evidence obtained in violation of Miranda may be admissible under Section 10, Article I, of the Ohio Constitution if it would have been admissible under some other legal principle.
 {¶ 19} In the case sub judice, we conclude that the contraband found on appellant's person is admissible in evidence under an exception to the Fourth Amendment prohibition against unreasonable searches. TheFourth Amendment protects people from unreasonable governmental searches and seizures. See Delaware v. Prouse (1979), 440 U.S. 648, 662,99 S.Ct. 1391, 59 L.Ed.2d 660.
A search conducted without prior approval by a judge or magistrate is per se unreasonable with, however, a few specifically established and well-delineated exceptions. Katz v. *Page 11 United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. One exception to the warrant requirement is when a search is conducted incident to an arrest. See State v. Penn (1991), 61 Ohio St.3d 720, 723,576 N.E.2d 790; State v. Akron Airport Post No. 8975 (1985),19 Ohio St.3d 49, 51, 482 N.E.2d 606. In Chimel v. California (1969),395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685, the United States Supreme Court explained the need, and outlined the extent, of this exception:
 "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area `'within his immediate control''-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (Emphasis added.)
 {¶ 20} Here, after appellant's arrest Trooper Johnson was constitutionally permitted to conduct a search for evidence on appellant's person. Obviously, the marijuana would have been found during such search.[2] *Page 12 
[EDITORS' NOTE: THIS PAGE CONTAINED FOOTNOTES.] *Page 13 
 {¶ 21} With respect to the search of the appellant's home, however, we recognize that a search incident to an arrest will not generally justify the subsequent search of a suspect's home unless the discovery of the evidence on the defendant's person provides a reasonable belief that evidence could be found at the residence. As we discuss fully under appellant's second assignment of error, however, in the case at bar appellant previously consented to a search of his home as part of his 2005 community control sanctions. Thus, the discovery of the fifty-three pounds of marijuana at appellant's home did not run afoul of appellant's constitutional protections. *Page 14 
 {¶ 22} In summary, although we disagree with the trial court thatMiranda warnings were not required under the facts in this case, we believe that the court's ruling constitutes harmless error under Crim.R. 52(A). Here, the officer would have nevertheless discovered the marijuana on appellant's person during a search incident to arrest. Further, the marijuana at appellant's home would have been discovered during a search executed pursuant to the community control documents.
 {¶ 23} For these reasons, we find no merit in the first assignment of error and it is hereby overruled.
 III {¶ 24} Appellant's second assignment of error advances a wide array of challenges to the constitutionality of the "probation search" of his residence. We begin with a review of some of the principles that pertain to a probationer's expectation of privacy against governmental search and seizure.
 {¶ 25} It is now generally accepted that a probationer's home may be searched without a warrant and on less than probable cause. SeeGriffin v. Wisconsin (1987), 483 U.S. 868, 877-878, 107 S.Ct. 3164,97 L.Ed.2d 709; State v. Cowans (1999), 87 Ohio St.3d 68, 76,717 N.E.2d 298. Ohio law permits a probation officer to conduct a warrantless search of a probationer's person or home if an officer has "reasonable grounds" to believe the probationer failed to abide by the law or by the terms of probation. R.C. 2967.131(C). Thus, a search pursuant to this statute complies with the Fourth Amendment if the officer who *Page 15 
conducts the search possesses "reasonable grounds" to believe that the probationer has not complied with the terms of probation. State v.Emch, Summit App. No. 20372, 2002-Ohio-3861, at ¶ 19 State v.Howell (Nov. 17, 1998), Jackson App. No. 97CA824.
To establish "reasonable grounds," an officer need not possess the same level of certainty that is necessary to establish "probable cause." Instead, the officer's information need only establish the "likelihood" that contraband will be found in a probationer's home. Howell, supra;Helton v. Ohio Adult Parole Authority (Jun. 26, 2001), Franklin App. No. 00AP-1108.
 {¶ 26} We now turn to the question of probation searches when a probationer has given prior consent for a search as part of a community control sanction. In 1998, the Ohio Supreme Court held that such searches are constitutional and opined that the only limit on such searches is that they must not be carried out on the basis of "ill will or intent to harass." See State v. Benton (1998), 82 Ohio St.3d 316,321, 695 N.E.2d 757. Otherwise, home searches may be conducted "any time." Id. at 322. In so holding, the Court apparently rejected the argument that a "reasonable basis" must exist for the search. Id. at 320. Justice Pfeifer, however, dissented in Benton and indicated that recent changes to R.C. 2967.131 limit "the scope of the decision" and strike a "reasonable middle ground" between probable cause searches and completely random searches. Benton, supra at 323 (Pfeifer, J. Dissenting).
 {¶ 27} Three years after Benton, the United States Supreme Court addressed this issue in United States v. Knights (2001), *Page 16 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 and upheld "probation searches" conducted pursuant to a condition of probation, provided that a "reasonable suspicion" exists that evidence of criminal activity can be found in a probationer's home. See Id. at 120-121.[3] The Court wrote:
 "We hold that the balance of these considerations requires no more than reasonable suspicion to conduct a search of this probationer's house. The degree of individualized suspicion required of a search is a determination of when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable. Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term `probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. Those interests warrant a lesser than probable-cause standard here. When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." (Citations omitted.)534 U.S. at 121.
 {¶ 28} In the case sub judice, the trial court applied a "reasonable grounds" standard and concluded that the marijuana found on appellant's person provided the police and appellant's *Page 17 
probation officer reasonable grounds to search his home. A "reasonable suspicion" standard is consistent with both R.C. 4 2967.131 and case law that interprets that provision.[4]
 {¶ 29} In the case sub judice, Trooper Johnson testified that appellant possessed marijuana, Xanax tablets and eight Loratabs. This fact raised a "reasonable suspicion" that appellant failed to comply with the terms of his probation and that he may have contraband at his residence.
 {¶ 30} Appellant argues that the probation search was invalid because the probation documents, which he signed gave and consent for the search his home and person, did not explicitly state that a search could be conducted "without a warrant." We disagree with appellant. Although the consent form in Knights explicitly states that a search could be conducted without a warrant, we do not believe that the court imposed a rule that consent forms must always include a recitation of the phrase "without a warrant." Rather, as the trial court aptly noted, the phrase "with or without probable cause" in the 2005 probation documents is "tantamount" to the phrase "with or without a warrant." We cannot conceive of a situation in which a warrant would issue "without probable cause" and appellant does not suggest one in his brief. Indeed, theFourth Amendment to the United States Constitution expressly prohibits it. *Page 18 
 {¶ 31} Appellant further argues that the search was unreasonable because the provision in the 2005 probation documents bore no reasonable relation to rehabilitating him from the prior offense of driving without an operator's license. We are not persuaded. The purpose of probation is to assist in rehabilitating an offender and to protect society from future criminal violations. Knights, supra at 119. Possession of illegal drugs violates the law. Therefore, a probation condition that forbids the possession of illegal drugs is reasonable, as is a search provision to allow probation officers to ensure that drugs are not located in the probationer's home.
 {¶ 32} Appellant also objects to the cooperation between Trooper Johnson and his probation officer in performing the probation search of his home. We find nothing improper in that arrangement, nor do we believe that the probation officer was used as a "stalking horse."[5]
Possession of marijuana is a crime and violates appellant's 2005 community control sanction. The fact that the probation officer and Trooper Johnson jointly conducted a search of appellant's residence does not render the search invalid. *Page 19 
 {¶ 33} To summarize, we agree with the trial court that a probation search is constitutional if "reasonable grounds" or a "reasonable basis" exists to conduct the search. We also agree that the marijuana found on appellant's person provided the police and appellant's probation officer reasonable grounds to search appellant's home. Thus, we hereby overrule appellant's second assignment of error.
 {¶ 34} Having reviewed the two errors assigned and argued in the briefs, and finding merit in neither of them, we hereby affirm the trial court's judgment
JUDGMENT AFFIRMED.
[1] The trial court noted that appellant and Trooper Johnson are familiar with one another and that the tone of the arrest and subsequent detention bordered on being friendly. Our review of the videotape of the stop and arrest confirms this view of the events.
[2] Additionally, it is interesting to consider whether appellant's admission to Trooper Johnson, if Trooper Johnson had framed his question differently, could have fallen under the "public safety exception" to the Miranda rule. Law enforcement officers who perform pat-down searches or searches incident to arrest may be confronted with dangerous objects hidden on the suspect's person. Limited questions posed to the suspect on this topic should be permitted. In New York v. Quarles (1984),467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550, the United States Supreme Court carved out the public safety exception and held that police may question suspects without first informing them of theirMiranda rights when a threat to public safety exists. Id. at 655-657. InQuarles, police pursued an armed suspect who ran into a store. When apprehended, the suspect wore an empty shoulder holster. Police asked him what he did with the gun and he motioned that it was behind some boxes. The Court held that his statement is admissible in evidence despite the absence of Miranda warnings because a loaded gun is a greater danger than any concern that the suspect might be coerced into giving a statement against his self-interest. Furthermore, the availability of the "public safety exception" does not depend on the subjective motivations of the officers. Id. at 656; State v. Sneed,166 Ohio App.3d 492, 851 N.E.2d 532, 2006-Ohio-1749, at 119. However, an objectively "reasonable concern" for public safety and the need to protect the public must exist. See State v. Prim (1999),134 Ohio App.3d 142, 154, 730 N.E.2d 455; State v. Thompson (Jan. 24, 2001), Jefferson App. Nos. 98JE28 98JE29; State v. Jergens (Sep. 3, 1993), Montgomery App. No. 13294.
We concede that no evidence exists in the case sub judice that Trooper Johnson possessed an objectively reasonable concern about public safety. Not only did he and appellant know each other, but a relatively friendly exchange occurred between the men and appellant apparently posed no danger to officer or to the public. Nevertheless, the question is whether an officer may ask questions to protect the officer's safety.
It does not appear that Ohio courts have fully explored this issue. InState v. House (Sep. 7, 2001), Lake App. No. 2000-L-172 the Eleventh District held that evidence should be suppressed after police asked a suspect if he had anything the police "should know about" and the suspect informed them he had a (marijuana) "bowl." That case provides little guidance here, however, because a vehicle was involved rather than a search of the person (which poses a greater danger to police). The court also concluded that the suspect had been improperly detained. Thus, the court's rejection of the public safety exception is dicta.
Recently, in State v. Flanders, Washington App. No. 06CA16,2007-Ohio-503, at ¶¶ 8, 22-24, we affirmed a trial court's suppression of evidence after an officer asked a suspect if "there was anything he should know about." Flanders also dealt with a search of a car rather than a person, however, and we did not explicitly discuss the "public safety exception" to Miranda.
This issue has also been discussed in other jurisdictions, but no bright line rule has been developed. In People v. Cressy (1996), Cal.App.4th 981, a deputy sheriff observed the driver of a stopped car drop a syringe from a window. The officer asked the driver if he had "any other needles" and the driver responded that he had drugs in his pocket. That statement was deemed admissible under the "public safety exception" despite the absence of danger to the public. The court explained that sticking a hand into a suspect's pocket exposes police to a puncture from a contaminated needle and, consequently, a life-threatening injury. Id. at 987-989. Thus, the "public safety exception" should extend to protect police even if no apparent danger exists to the public at large. The court carefully emphasized the narrowness of its holding, however, and noted that only questions about needles or other potentially dangerous items are permissible. Open-ended questions, however, (for example "What's in your pocket?") are overly broad. Id.
Recently, in People v. Washington (May 17, 2007), California Second App. District No. B194035, available at www.courtinfo.ca. gov/opinions/nonpub, the court held that a suspect's admission that he possessed "crystal" was admissible after an officer asked the suspect if he had "any guns or weapons or anything I should know about." The court reasoned that the broad question, (do you have "anything I should know about") was asked in the context of guns or other weapons and was thus permissible.
Several federal courts have also applied the "public safety exception" to allow police to inquire on subjects related to their own safety if the questions are narrowly tailored so as not to elicit an incriminating response. The Ninth Circuit held it permissible to ask a suspect if he possesses drugs or needles, United States v. Carrillo (C.A.9 1994),16 F.3d 1046, 1049-1050, and the Tenth Circuit approved asking a suspect if he had anything that "would hurt me?" United States v. Lackey (C.A.10 2003), 334 F.3d 1224, 1225-1226.
Again, it is interesting to speculate about the possible application of the "public safety exception" in the case sub judice. On one hand, appellant is a known drug user and could have possessed needles, pipes, glass vials, or razor blades in his pocket. On the other hand, Trooper Johnson apparently did not have a specific concern. Also, and more problematic, Trooper Johnson did not ask appellant a simple question regarding dangerous materials on appellant's person but, instead, asked questions specifically about marijuana. We see the benefit of permitting law enforcement officers to ask narrowly tailored questions concerning dangerous materials on the detainee's person that could cause harm to the officer.
[3] The United States Supreme Court appears to have curtailed theKnights standard when a parolee (rather than a probationer) is involved. See Samson v. California (2006), ___ U.S. ___, 126 S.Ct. 2193,165 L.Ed.2d 250. The court explained the variance in treatment, in part, because parolees have fewer expectations of privacy than probationers. Id at 2198. Because appellant is a probationer rather than a parolee, we follow Knights rather than Samson. We also point out thatSamson calls into question the proposition that probationers and parolees are treated the same for purposes of Fourth Amendment analysis. See e.g. State v. McCain, 154 Ohio App.3d 380, 797 N.E.2d 527,2003-Ohio-4890, at ¶ 7. Also, the Knights court specifically stated that it did not address whether a probationer's advance consent for a warrantless searche constitutes a valid waiver of Fourth Amendment guarantees.
[4] Although the trial court looked for "reasonable grounds" to conduct the search rather than reasonable suspicion, the two standards are essentially the same.
[5] A "stalking horse" refers to a theory in federal jurisprudence whereby police, who do not have a sufficient Fourth Amendment basis to conduct a search, nevertheless make use of the suspect's probation officer as a subterfuge to enter and search the home for contraband. See e.g. United States v. Golliday (C.A.6 2005), 145 Fed. Appx. 502, 505. The Sixth Circuit Court of Appeals, however, has questioned whether a "stalking horse" theory is cognizable following the Supreme Court's decision in Knights. See United States v. Penson (C.A.6 2006), 141 Fed. Appx. 406, 410, at fn. 2.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions. *Page 20 
Harsha, J. Kline, J.: Concur in Judgment Opinion as to Assignment of Error I; Concur in Judgment Only as to Assignment of Error II *Page 1