The STATE of Ohio, Appellant,

v.

SNEED, Appellee.

[Cite as *State v. Sneed,* 166 Ohio App.3d 492, 2006-Ohio-1749.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–050357.

Decided April 7, 2006.

494

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr., Assistant Prosecuting Attorney, for appellant.

Dennis K. McCarthy, for appellee.

SYLVIA SIEVE HENDON, Judge.

{¶ 1} Defendant-appellee, Rascal Sneed, was charged with carrying a concealed weapon in violation of R.C. 2923.12(A), following his admission to police that he had carried a loaded gun under his shirt. The trial court granted Sneed's motion to suppress his admission. The state of Ohio appeals.

### Sneed's Prewarning and Postwarning Statements to Police

{¶ 2} At the hearing on his motion to suppress, Sneed testified that one night, as he was driving his vehicle, his passenger yanked the steering wheel and caused the vehicle to crash into a fence at a business facility. After the crash, the vehicle's engine would not start. Sneed realized that his vehicle would have to be towed, so he was afraid to leave a loaded gun in the vehicle's rear compartment. Sneed jumped out of the driver's seat and ran to the rear of the vehicle. Sneed lifted the hatchback and grabbed the gun from behind the tire jack. Then Sneed

ran down the street, threw the gun in some bushes, and returned to the vehicle to wait for the police.

{¶ 3} Doug Jones testified that he was working at the facility when he saw the vehicle crash into the fence. Jones thought that the occupants of the vehicle might have been injured, so he called the police. Jones saw a man get out of the vehicle, run down the sidewalk toward some bushes, and return to the vehicle. When police officers arrived, Jones told them what he had seen.

{¶ 4} Cincinnati Police Officer Michael Winslow testified that he and his partner were responding to the accident scene when they received an additional dispatch. The dispatch relayed a complainant's report that a man involved in the accident had thrown an unknown object into some bushes down the street, about 100 yards south of the wrecked vehicle.

{¶ 5} When the officers arrived at the accident scene, they saw the vehicle's track marks leading up an embankment to a fence. The vehicle had rolled back down the embankment and had come to rest.

{¶ 6} Officer Winslow testified that there was some confusion at first as to who was at fault in the accident. The officers charged Sneed's passenger with driving under the influence of alcohol after determining that she had taken control of the vehicle and had caused the crash.

{¶ 7} The officers learned that Sneed had two outstanding bench warrants, so they placed him under arrest. He was handcuffed and placed in a police cruiser.

{¶ 8} Officer Winslow testified that he noticed an odor of an alcoholic beverage and thought that Sneed might have tried to discard or hide alcohol in the bushes. So Officer Winslow asked Sneed, "[W]hat is that object? * * * [I]s it alcohol or is it a gun of any sort or any kind of weapon?" Sneed responded, "Well, yeah, actually, it's a gun. * * * I'll show you right where it is."

{¶ 9} Officer Winslow immediately read Sneed his *Miranda*[1] rights. Sneed indicated that he understood his rights and agreed to speak to the officers. According to Officer Winslow, Sneed was cooperative as he directed the officer to the bushes where he had thrown the gun.

{¶ 10} Officer Winslow testified that he asked Sneed how he had gotten the gun from his vehicle to the bushes without anyone seeing it. He asked Sneed, "[D]id you have it in your waistband?" According to Officer Winslow, Sneed responded that he had stuck the gun in his waistband, in the small of his back, and that he had concealed the gun by putting his shirt over it.

---

1. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

{¶ 11} Officer Winslow testified that he had not made any promises or threats to Sneed, and that he did not coerce Sneed or deny him necessary medical care.

{¶ 12} Sneed, however, testified that he had not concealed the gun when he ran down the street. He said that he had simply held the gun at his side. Sneed also said that the officer had not advised him of his *Miranda* rights.

### The Trial Court's Ruling

{¶ 13} Apparently, the trial court believed Officer Winslow's version of the events because it found that Sneed had been given the *Miranda* warnings following his admission that the thrown object was a gun. But the court found that Sneed's initial statements were not voluntary, "given the inherently coercive circumstances of the custodial interrogation." The court concluded that the officer's "midstream" *Miranda* warnings were not sufficient to cure the taint of coercion that carried over from the initial statements. Consequently, the court suppressed Sneed's postwarning statements to police about how he had carried the gun from his vehicle to the bushes.

### The State Appeals

{¶ 14} In a single assignment of error, the state argues that the trial court erred by suppressing Sneed's postwarning statements. First, the state contends that Sneed's prewarning statements came within the "public safety" exception to the *Miranda* rule, so his postwarning statements should not have been suppressed. Second, the state argues that even if the public-safety exception did not apply, Sneed's prewarning and postwarning statements were voluntarily made.

### Our Standard of Review

{¶ 15} Appellate review of a motion to suppress presents a mixed question of law and fact.[2] In considering a motion to suppress, the trial court is in the best position to decide the facts and to evaluate the credibility of the witnesses.[3] Consequently, we must accept the trial court's findings of fact if they are supported by competent and credible evidence.[4] With respect to the trial court's conclusions of law, however, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard.[5]

---

2. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8.

3. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972.

4. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583.

5. *Burnside,* supra, at ¶ 8.

### Public–Safety Exception to the Miranda Warnings Requirement

■ {¶ 16} The state argues that Sneed's initial unwarned statements were admissible under the public-safety exception to the *Miranda* rule. The state contends that the trial court erred by excluding Sneed's postwarning statements as illegal fruit of a *Miranda* violation, when no such violation had occurred.

{¶ 17} The United States Supreme Court enunciated the public-safety exception in *New York v. Quarles.*[6] In that case, police apprehended a suspect and had reason to believe that the suspect had just discarded a gun in a supermarket. Before advising the suspect of his *Miranda* rights, an officer asked him where the missing gun was. The suspect said, "[T]he gun is over there," and officers recovered the loaded gun. After being arrested and advised of his *Miranda* rights, the suspect admitted that he owned the gun.

■ {¶ 18} The court recognized that the missing gun posed a great danger to the public and that there are situations in which the need for answers to questions regarding public safety outweighs the need for the prophylactic *Miranda* warnings.[7] Consequently, the court adopted a public-safety exception to the *Miranda* rule: police may justifiably fail to inform a suspect of his *Miranda* rights in order to ask questions necessary to secure their own safety or the safety of the public.[8] The questions asked under the public-safety exception must be readily distinguishable from questions designed to elicit testimonial evidence from the suspect.[9]

■ {¶ 19} The availability of the public-safety exception does not depend upon the motivation of the individual officers involved.[10] So application of the exception does not depend "on post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer."[11]

{¶ 20} Here, police officers responding to the scene of a single-vehicle accident at night were informed that after the accident, a passenger had hurriedly thrown an object into some bushes about 100 yards away from the wrecked vehicle.

6. *New York v. Quarles* (1984), 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550.

7. Id. at 657, 104 S.Ct. 2626, 81 L.Ed.2d 550.

8. Id. at 654–655, 658–659, 104 S.Ct. 2626, 81 L.Ed.2d 550.

9. *State v. Turner* (June 16, 2000), 1st Dist. No. C–990388, 2000 WL 770136, citing *Quarles*, supra, 467 U.S. at 656–658, 104 S.Ct. 2626, 81 L.Ed.2d 550.

10. *Quarles*, 467 U.S. at 656, 104 S.Ct. 2626, 81 L.Ed.2d 550.

11. Id. at 656, 104 S.Ct. 2626, 81 L.Ed.2d 550.

Officer Winslow suspected that Sneed was trying to hide or discard something, but admitted that he did not know whether the item was a weapon or alcohol.

{¶ 21} Certainly, a reasonable officer would have suspected that Sneed did not want investigating officers to discover the concealed object and would have suspected that such an object might have posed a threat to the public. Indeed, a reasonable officer might have been remiss in his duties to protect the public if he had not attempted to quickly ascertain the nature of the object.

{¶ 22} Had *Miranda* warnings deterred Sneed from responding to Officer Winslow's question about the nature of the thrown object, potentially "the cost would have been something more than merely the failure to obtain evidence useful in convicting [him]." [12] In any event, Officer Winslow's questions to Sneed were not designed to elicit testimonial evidence but to determine the character of the thrown object. The officer's prewarning questioning simply ensured that the public would not be endangered by the concealment of a dangerous item in a public area. [13]

{¶ 23} Accordingly, we hold that Sneed's unwarned statements fell within the public-safety exception and that the trial court erred by excluding Sneed's subsequent warned statements as illegal fruits of a *Miranda* violation. [14]

### Admissibility of Postwarning Statements under Elstad and Seibert

{¶ 24} The state further argues that even if the public-safety exception did not apply, the trial court erred by excluding Sneed's postwarning statements based upon its finding that Sneed's prewarning statements were not voluntarily made.

### A. Unwarned yet Uncoerced Statements—Oregon v. Elstad

{¶ 25} In *Oregon v. Elstad*,[15] the United States Supreme Court held that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after being given *Miranda* warnings.

{¶ 26} The court recognized that the failure to give *Miranda* warnings does not mean that a suspect's unwarned statements have actually been coerced.[16] The failure to warn simply creates a presumption of compulsion, so that un-

---

12. Id. at 657, 104 S.Ct. 2626, 81 L.Ed.2d 550.

13. Id.

14. Id. at 659–660, 104 S.Ct. 2626, 81 L.Ed.2d 550.

15. *Oregon v. Elstad* (1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222.

16. Id. at 310, 105 S.Ct. 1285, 84 L.Ed.2d 222.

warned but otherwise voluntary statements must be excluded from evidence under *Miranda.*[17]

■ {¶ 27} The court stated, "It is an unwarranted extension of *Miranda* to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made."[18]

### B. *"Question–First"* Interrogation—Missouri v. Seibert

{¶ 28} In *Missouri v. Seibert,*[19] the United States Supreme Court addressed the admissibility of a suspect's postwarning statements obtained as a result of a "question-first" interrogation strategy. In this strategy, police deliberately withhold *Miranda* warnings until their interrogation leads a suspect to confess.[20] Then police obtain a waiver of *Miranda* rights from the suspect and lead the suspect to relate the same material a second time.[21] "The strategy is based on the assumption that *Miranda* warnings will tend to mean less when recited midinterrogation, after inculpatory statements have already been obtained."[22]

■ {¶ 29} The court[23] held that the admissibility of postwarning statements continues to be governed by *Elstad* unless police used the deliberate question-first strategy.[24] If that strategy was used "in a calculated way to undermine the *Miranda* warning," then postwarning statements related to the substance of prewarning statements must be excluded unless curative measures were taken

---

17. Id. at 307, 310, 105 S.Ct. 1285, 84 L.Ed.2d 222.

18. Id. at 309, 105 S.Ct. 1285, 84 L.Ed.2d 222.

19. *Missouri v. Seibert* (2004), 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643.

20. See id. at 604, 609–610, 124 S.Ct. 2601, 159 L.Ed.2d 643 (plurality opinion).

21. Id.

22. Id. at 620, 124 S.Ct. 2601, 159 L.Ed.2d 643 (Kennedy, J., concurring in the judgment).

23. Because none of the opinions in *Seibert* garnered the votes of five justices, Justice Kennedy's concurring opinion represented the holding of the court. See *Marks v. United States* (1977), 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260.

24. *Seibert*, 542 U.S. at 622, 124 S.Ct. 2601, 159 L.Ed.2d 643 (Kennedy, J., concurring in the judgment).

before the postwarning statements were made.[25] Curative measures "should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver." [26]

### Voluntariness of Sneed's Statements and Waiver

{¶ 30} In this case, Officer Winslow did not use a question-first interrogation strategy in a deliberate attempt to undermine the *Miranda* warnings. This was not like *Seibert*, in which the officer had conducted an extensive prewarning interview to obtain incriminating statements that would be used to elicit inculpatory postwarning statements. Here, in response to the officer's questioning, Sneed merely acknowledged that the object was a gun. At that moment, Sneed provided no information necessary for him to be charged with carrying a concealed weapon. Only after being advised of his *Miranda* rights did Sneed implicate himself in the crime of carrying a concealed weapon. So it is clear that Officer Winslow did not rely on Sneed's prewarning statements to obtain his postwarning statements relating to his transportation of the gun. Because Officer Winslow did not use the question-first strategy, we must look to *Elstad* to determine the admissibility of Sneed's postwarning statements.

{¶ 31} *Elstad* requires that a court make a threshold inquiry into the effect of the *Miranda* violation on the voluntariness of a suspect's unwarned statement.[27] In determining whether a suspect's statement was made voluntarily, a court should consider the totality of the circumstances.[28] These circumstances include "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." [29] The same considerations apply to whether the suspect understood and voluntarily waived his *Miranda* rights.[30] "[E]vidence of police coercion or overreaching is necessary for a finding of involuntariness." [31]

---

25. Id.

26. Id.

27. *Elstad,* supra, 470 U.S. at 317–318, 105 S.Ct. 1285, 84 L.Ed.2d 222.

28. See *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042.

29. *State v. Edwards* (1976), 49 Ohio St.2d 31, 3 O.O.3d 18, 358 N.E.2d 1051, paragraph two of the syllabus.

30. See *State v. Green* (2000), 90 Ohio St.3d 352, 366, 738 N.E.2d 1208.

31. *State v. Hill* (1992), 64 Ohio St.3d 313, 318, 595 N.E.2d 884, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473.

{¶ 32} Once a court finds that a suspect's unwarned statement was voluntary, the focus of the inquiry shifts to whether the suspect's postwarning statement was knowingly and voluntarily made.[32] The fact that a suspect chooses to speak after being given *Miranda* warnings is highly probative.[33]

{¶ 33} Here, there was no evidence of coercive tactics that would have rendered Sneed's unwarned statements or *Miranda* waiver involuntary. Police made no threats or promises to get Sneed to confess. And police did not subject Sneed to lengthy or intense questioning. Because Sneed voluntarily and knowingly waived his *Miranda* rights, we conclude that Sneed's postwarning statements were not involuntary.

### Conclusion

{¶ 34} Accordingly, we hold that the trial court erred by suppressing Sneed's postwarning statements. We sustain the single assignment of error and reverse the trial court's judgment.

Judgment reversed
and cause remanded.

GORMAN, P.J., and SUNDERMANN, J., concur.

---

32. See *Dixon*, supra, 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, at ¶ 32.

33. See *Elstad*, supra, 470 U.S. at 318, 105 S.Ct. 1285, 84 L.Ed.2d 222.