[Cite as *State v. Spencer*, 2012-Ohio-6300.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,                 :   Case No.  11CA3293
                                        :
    vs.                                 :   **RELEASED 12/21/12**
                                        :
DOROTHY L. SPENCER,                     :   DECISION AND JUDGMENT
                                        :   ENTRY
    Defendant-Appellant.                :
_____

APPEARANCES:

Lori J. Rankin, Chillicothe, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, Chillicothe, Ohio,
for Appellee.

_____

McFarland, J.:

{¶1} Appellant, Dorothy Spencer, appeals her conviction in the Ross
County Court of Common Pleas after she pled no contest to one count of
aggravated robbery. Appellant's appellate counsel advised this Court that,
after reviewing the record, she cannot find a meritorious claim for appeal.
As a result, Appellant's counsel has moved to withdraw under *Anders v.
California,* 386 U.S. 738, 87 S.Ct. 1396 (1967).  After independently
reviewing the record, we find no merit to the sole assignment of error and
further find no additional error prejudicial to the Appellant's rights in the

trial court proceedings.  Accordingly, this appeal is found to be without merit and wholly frivolous. Counsel's motion to withdraw is found well-taken and is, hereby, granted.  The judgment of the trial court is affirmed.

FACTS

{¶2} On February 5, 2010, Appellant was indicted on one count of aggravated robbery, a first degree felony in violation of R.C. 2911.01.  The indictment also contained a gun specification.   On March 12, 2010, Appellant filed a motion to suppress her statements made to Detective Chris King.  The motion to suppress hearing took place on April 6, 2010.

{¶3} At the suppression hearing, Detective King testified he went to Appellant's home on January 21, 2010, at East Main Street in Chillicothe, hoping to interview her regarding a crime which occurred at the Chillicothe Inn.  No one answered Appellant's door, so he left his business card. Later that day, Appellant telephoned Detective King at the Law Enforcement Complex.  Detective King explained that he wanted to speak to her about an incident he was investigating. A short time later, Appellant's boyfriend drove her to the police station.  She arrived around 11:30 a.m.

{¶4} Detective King escorted Appellant to the interview room, which, according to his testimony, was eight or ten feet by ten feet.  He was wearing his uniform, badge, and firearm.   Appellant and Detective King were

approximately two feet apart during the interview.  Appellant sat at the end of a table and Detective King sat at the corner of the table closest to her.

{¶5} Detective King never told Appellant that she was in custody, that she was under arrest, that she could be arrested during the interview, or that she was free to leave the interview.   He did recite her Miranda Rights to her and asked her if she understood those rights.   Appellant indicated that she understood her Miranda Rights and that she was willing to waive them. Detective King acknowledges he did not provide Appellant with a copy of the Miranda Rights in written form.

{¶6}  Detective King testified he had ample time to observe Appellant's demeanor and physical condition during the interview.   She had no difficulty walking and did not stumble or stagger.  Detective King did not notice slurred speech.  Appellant did not appear to have trouble understanding the questions or formulating answers. She did not seem confused.  Detective King specifically testified Appellant presented no indicia of intoxication.  Detective King acknowledged he never asked Appellant, before or during the interview, whether or not she was under the influence of any alcohol and/or drugs. Appellant did inform him she was under extreme stress due to financial issues.

{¶7} The interview lasted approximately two hours. Appellant took one smoke break and was accompanied the entire time by another detective. She also had one restroom break, however, Appellant never asked if she could leave. After the interview was concluded, Detective King advised Appellant he felt there was probable cause to believe she committed the crime of aggravated robbery, and he subsequently placed her under arrest.

{¶8} At the time of the suppression hearing, Detective King had worked as a detective for approximately one year. Prior to becoming a detective, he was on road patrol for four years. Detective King testified to approximately one hundred opportunities to observe different types of intoxication and impairment and perform field sobriety tests.

{¶9} At the suppression hearing, Appellant testified she had been up for three days smoking crack up until shortly before the time he knocked on her door. She stated: "I was in no condition to face any of them for anything," because she was "under the influence of crack cocaine." She stated at the time Detective King came to her apartment, a couple of friends were inside with her. Her friends were in possession of drugs and under the influence. They would not let her open the door. Appellant testified Detective King was "beating down the door," but he did not identify himself. Later she found his card lying on the floor, picked it up, and called

him. Appellant eventually presented that same day to Detective King. She testified when he took her into the interview room, the "first thing out of his mouth was that I have been talking to your family and your daughter about your out of control crack problem…." Appellant next testified that she "vaguely" recalled Detective King reading her the Miranda Rights. Appellant further testified she felt like she was not allowed to leave once the interview started. She testified that she "couldn't think straight," and her mind was "blowed all apart" about (1) "being up there over something I did not do;" (2) "him telling my family that I was on crack…." She also testified she was bipolar with borderline personality disorder. Appellant also stated she was under the influence of prescription medications, including hydroxine and saphris. Appellant testified she felt she "had to tell him something to get out of there," and that Detective King told her when they were finished with the interview, she could go see her daughter.

{¶10} On May 4, 2010, the trial court overruled the motion to suppress, finding that Appellant did knowingly, voluntarily, and intelligently waive her rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966). Appellant subsequently entered a plea of no contest with the understanding that she would be preserving her right to appeal the trial court's suppression ruling. The appeal is timely. We have allowed

Appellant sufficient time to respond to counsel's brief and no response has been received.

## ANDERS BRIEF

{¶11} Under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967), counsel may ask permission to withdraw from a case when counsel has conscientiously examined the record, can discern no meritorious claims for appeal, and has determined the case to be wholly frivolous. *Id.,* at 744; *State v. Adkins,* 4th Dist. No. 03CA27, 2004-Ohio-3627, ¶8.  Counsel's request to withdraw must be accompanied with a brief identifying anything in the record that could arguably support the client's appeal.  *Anders* at 744; *Adkins* at ¶8.  Further, counsel must provide the defendant with a copy of the brief and allow sufficient time for the defendant to raise any other issues, if the defendant chooses to.  *Id.*

{¶12} Once counsel has satisfied these requirements, the appellate court must conduct a full examination of the trial court proceedings to determine if meritorious issues exist.  If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and address the merits of the case without affording the appellant the assistance of counsel. *Id.*  If, however, the court finds the existence of meritorious issues, it must afford the appellant assistance of counsel before deciding the

merits of the case. *Anders* at 744; *State v. Duran,* 4th Dist. No. 06CA2919, 2007-Ohio-2743, ¶7.

In the current action, Appellant's counsel advises that the appeal is wholly frivolous and has asked permission to withdraw. Pursuant to *Anders,* counsel has filed a brief raising one potential assignment of error for this Court's review.

POTENTIAL ASSIGNMENT OF ERROR

I.      THE TRIAL COURT ERRED IN VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT OVERRULED THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.

LEGAL ANALYSIS

{¶13} In her sole assignment of error, Appellant contends that the trial court erred in violation of her Fifth and Sixth Amendment rights under the United States Constitution when the motion to suppress was overruled. Specifically, Appellant contends that her statement, which she argues was obtained while she was under the influence of crack cocaine, was not knowingly and intelligently made. Appellant maintains that at the time she provided a statement to Detective King, her will was overborne by the crack cocaine she had been smoking during the 72-hour period before the interrogation.

{¶14} Our review of a decision on a motion to suppress "presents mixed question of law and fact." *State v. McNamara*, 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (4th Dist.1997) citing *United States v. Martinez* (C.A. 11, 1992), 949 F.2d 1117, 1119.  At a suppression hearing, the trial court is in the best position to evaluate witness credibility.  *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995). Accordingly, we must uphold the trial court's findings of fact if competent, credible evidence in the record supports them.  Id.  We then conduct a de novo review of the trial court's application of the law to the facts.  *State v. Anderson*, 100 Ohio App.3d  688, 691, 654 N.E.2d 1034 (4th Dist.1995); *State v. Fields*, 4th Dist. No. 99CA11, WL1125250 (Nov. 29, 1999).

{¶15} "[E]ven if Miranda warnings were required and given, a defendant's statements may be deemed involuntary and thus, be subject to exclusion." *State v. Marshall,* 4th Dist. No.  06CA23, 2007-Ohio-6298, 2007 WL 4180806, ¶42, citing *State v. Kelly*, 2nd Dist. No. 2004-CA-20, 2005-Ohio-305, 2005 WL 182900, ¶11. " 'A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.' " *Colorado v. Spring,* 479 U.S. 564, 574, 107 S. Ct. 851, 857-858

(1987); *Kelly*, above, at ¶25, quoting *State v. Dailey*, 53 Ohio St.3d 88, 91, 559 N.E.2d 459 (1990). " 'In determining whether a suspect's statement was made voluntarily, a court should consider the totality of the circumstances. These circumstances include 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *Id.* quoting *State v. Sneed,* 166 Ohio App.3d 492, 2006-Ohio-1749, 851 N.E.2d 532 (1st Dist.1996), ¶31, quoting *State v. Edwards* , 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), at paragraph two of the syllabus, (overruled on other grounds by *Edwards v. Ohio* 438 U.S. 91, 98 S. Ct. 3147, (1978).

{¶16} The 11th District Court of Appeals addressed the issue Appellant raises, essentially that she was up three days smoking crack and this alleged activity negated her ability to make a knowing, voluntary, and intelligent waiver of Miranda rights, in *State v. Klapka,* 11th Dist. No. 2003-L-044, 2004-Ohio-2921, 2004 WL 1238411. There, Defendant-Appellant was convicted of possession of heroin and complicity to illegal conveyance of drug abuse onto the grounds of a detention facility. On appeal, Klapka claimed that the trial court should have granted her motion to suppress because she was under the influence of heroin at the time she made certain

statements.  Citing *Edwards and Dailey* above, the appellate court noted that

the evidence presented at the suppression hearing indicated that Klapka's

will was not overborne by any police conduct and that her statement was

voluntary.  Specifically, at the suppression hearing, two detectives testified

that they did not notice any behavior that would indicate Klapka was under

the influence of any intoxicating substance.   They testified she was

coherent, attentive, responsive, and fully- oriented to her surroundings and

situation.  The appellate court opined at ¶20:

> "Even if Klapka had ingested heroin prior to the interview, this,
> alone, would not render her statement involuntary.  Since she
> exhibited no outward signs of intoxication and since she admits
> that she did not tell either Det. Sherwood or Lt. Walters that she
> had ingested the heroin, her purported ingestion of the heroin
> would not render her statements involuntary."  See *State v.
> Smith*, 80 Ohio St. 3d 89, 112, 1997-Ohio-355, 684 N.E.2d 668,
> (1997), ("Intoxication affecting one's state of mind, absent
> coercive police activity, would be an insufficient reason to
> exclude [a] voluntary confession.").

The 11th District court further concluded:

> "In fact, viewing the totality of the circumstances, we conclude
> that Klapka's statement was voluntary in nature.  Klapka is a
> twenty-two year old female with a high school education and
> some college experience.  The single interview was no longer
> than 90 minutes and was conducted in an office at the Lake
> County Sheriff's Office.  Klapka was properly Mirandized and
> waived her rights both orally and in writing.  There were no
> claims or evidence of physical deprivation or mistreatment.
> Finally, Klapka was not threatened, nor was she induced, as
> discussed above, into making the statement.  We, therefore, find
> that Klapka's will was not overborne by any police conduct and

that Klapka's statement was voluntary.  See *Edwards*, 49 Ohio
St.2d at 41, 358 N.E.2d 1051; *State v. Comstock,* 11th Dist. No.
96-A-0058, 1997 WL 531304 (Aug.29, 1997)."

{¶17} A similar issue was addressed in *State v. Williams,* 8th Dist.

No. 82094, 2003-Ohio-4811, 2003 WL 22100230.  There, defendant-

appellant was convicted in the Cuyahoga County Common Pleas Court of

aggravated murder, attempted murder, aggravated robbery, possession of

drugs, and having a weapon while under disability.  On appeal, appellant

claimed that his drug intoxication (being under the influence of PCP at the

time he made certain statements) rendered his waiver of *Miranda* rights

involuntary. The appellate court disagreed, however, concluding that based

on a totality of the circumstances, the State met its burden of demonstrating

that defendant's confession was voluntary.  The appellate court noted that

although there was evidence that the defendant may have been under the

influence of drugs at the time he made his statement, there was no evidence

that the drugs affected his ability to understand his rights or his decision to

waive them. *Williams*,¶ 18.  All of the police officers involved testified that

defendant was coherent, seemed aware of what was going on, listened to the

explanation of his rights, and seemed to understand what was told to him. *Id.*

"Thus, there is no evidence that defendant's possible drug usage affected his

ability to understand his rights, and he could knowingly and intelligently waive them. *Id.* See *Edwards and Dailey*, above.

{¶18} In *State v. Banford,* 6th Dist. No. L-05-1334, 2007-Ohio-3821, 2007 WL 2164002, appellant appealed his conviction after a jury trial for aggravated robbery with a firearm specification. The appellant specifically argued his statement was not voluntary because at the time of arrest and police interview, he had previously injected himself with morphine. During the suppression hearing, a videotaped interview was played and a detective who testified admitted that appellant was a little "jumpy." The appellate court noted that even if arm scratching and "jumpiness" was caused by "coming down from a morphine high," there was no indication that the morphine affected appellant's ability to understand his rights and his decision to waive them. *Id.* ¶ 14. The appellate court further noted that appellant was able to recite his name, age, address, and answer the detective's questions, (although it was clear he did not wish to implicate others.) *Id.*

{¶19} More recently, this Court addressed the test for voluntariness under Fifth Amendment analysis in *State v. Michael,* 4th Dist. No. 09CA887, 2010-Ohio-5296, 2010 WL 4273225. Michael was convicted of arson and aggravated arson. Although Michael did not allege that she was

under the influence of drugs or alcohol, she argued the trial court erred by denying her motion to suppress statements that, allegedly, were not made voluntarily, knowingly, or intelligently. Relying on the law in *Edwards and Dailey* above, this Court considered the totality of the circumstances and fully agreed with the trial court's analysis of the facts and circumstances which surrounded Michael's interview, which were set forth at ¶11 of the opinion as follows:

> "Michael was advised of the allegations against her; she was apprised of her Miranda rights and she waived those rights; though only 19 years old and though her education was limited to completing the eighth grade, she communicates and writes very well; she was not under the influence of any alcohol or drugs; she voluntarily came to the police station to give her statement; the interview lasted, at most, 45 minutes; she was not subjected to physical or mental deprivation and there were no allegations of mistreatment; the intensity of the questioning was 'at best de minimus, if not void of intensity.' "

{¶20} Based upon our independent review of the suppression hearing, we agree with the trial court's conclusion that Appellant's statements were voluntarily, knowingly, and intelligently made. Reviewing the totality of the circumstances, the record reflects that Appellant is 37 years old, able to read and write, and actually has an associate degree in business management. She voluntarily made arrangements to go to the Law Enforcement Complex and speak with Detective King. Detective King recited her Miranda Rights

to her at the beginning of the interview. The record also indicates that Appellant has prior knowledge of the criminal justice system as she was convicted of 3 felonies in 2004.

{¶21} Detective King was wearing a uniform, badge, and firearm. The interview itself was conducted in a small room and lasted approximately two hours. However, there was also evidence that Appellant had two breaks, one to smoke and one to use the restroom. She was not physically deprived and she makes no claim that she was mistreated.

{¶22} Also relevant is Detective King's testimony that Appellant presented no indications of being legally intoxicated or under the influence of any drugs or alcohol. He testified to his experience recognizing these indicators and performing field sobriety tests. He specifically noted she had no problems walking. Her speech was not slurred, and she did not seem confused or unable to formulate answers. Importantly, she did not tell him that she was under the influence of drugs or alcohol or, as she now advises, had been up smoking crack cocaine for three days.

{¶23} Nor do we find it problematic that if, as Appellant testified, Detective King told her she could leave and go see her daughter after the interview was finished. The trial court observed a possible question as to whether or not there was even a custodial interrogation, given that Appellant

appeared voluntarily. The evidence indicates Appellant never made a request to leave. Given our previous conclusions regarding Appellant's age and education, the lack of physical deprivation and absence of any allegations of mistreatment, even if Detective King did tell her she could see her daughter after the interview, we do not discern this possible inducement to be a prevailing factor. We believe this case to be similar to *Klapka.* Appellant exhibited no outward signs of intoxication and since she apparently did not tell Detective King that she had been smoking crack for three days immediately prior to her interview, her purported drug usage would not render her statements involuntary.

{¶24} Pursuant to our de novo review of the record, we agree with the trial court's findings that Appellant's statements were voluntarily, knowingly, and intelligently made pursuant to *Miranda v. Arizona.* We therefore conclude that the potential assignment of error advanced by appellate counsel is without merit, and this appeal is found to be wholly frivolous. The motion of counsel for Appellant requesting to withdraw as counsel is hereby granted and the judgment of the Ross County Court of Common Pleas is affirmed.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**