DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Ross County Common Pleas Court judgment that suppressed evidence intended to be used against James D. DeLong, defendant below and appellee herein. The State of Ohio, plaintiff below and appellant herein, assigns the following error for review:
 "THE TRIAL COURT ERRED IN SUPPRESSING EVIDENCE BASED ON A DETERMINATION THAT LAW ENFORCEMENT OFFICERS DID NOT HAVE PROBABLE *Page 2 
 CAUSE TO ENTER THE RESIDENCE OF THE DEFENDANT WITHOUT A WARRANT."
 {¶ 2} On the evening of January 31, 2006, Laura Peters telephoned the Ross County Sheriff's Department to report that appellee was "beating on" her mother. When deputies arrived at the residence, Kelly Peters (Laura's mother) met them in the front yard and informed them that everything was fine, that appellee calmed down and that they were no longer needed. The deputies, however,[1] decided to speak with appellee. After they walked into the home and found appellee in a backroom playing "internet pool," they ordered him to stand and to put his hands on the wall. Appellee rose from his chair, but then allegedly grabbed a knife from the top of the computer console which prompted the deputies to stun him with a taser.
 {¶ 3} The Ross County Grand Jury returned an indictment charging appellee with resisting arrest in violation of R.C. 2921.33. Appellee pled not guilty and subsequently filed a motion to suppress evidence that argued that the deputies' entry into his home was constitutionally impermissible.
 {¶ 4} At the hearing to consider the motion, Kelly Peters testified that although she and appellee had engaged in a "loud argument" that evening, "he had never laid a hand on [her] at all." Peters explained that she told deputies appellee "had never hit [her], that everything was fine and that [she] didn't *Page 3 
need them." Nevertheless, without any request or permission to do so, the deputies entered the residence to look for appellee.
 {¶ 5} Deputy Mont Steele, one of the deputies dispatched to the home, conceded that Ms. Peters informed them that they were not needed. When Deputy Steele told her that they needed to speak with appellee, she stated that appellee told her there would be a "bloody fight" if they tried to arrest him and that they would "have to shoot him." The deputy admitted that this obviously "piqued [his] curiosity" and concerned him that "[s]omething was wrong."
 {¶ 6} The trial court granted appellee's motion to suppress and reasoned that the deputies' warrantless entry into the home was without permission and not justified by exigent circumstances. This appeal followed.
 {¶ 7} Appellant asserts in its assignment of error that the trial court erred by granting appellee's motion to suppress evidence. We disagree.
 {¶ 8} Our analysis begins with the well-settled premise that appellate review of a trial court's decision on a motion to suppress involves mixed questions of law and fact. State v. Book, 165 Ohio App.3d 511,847 N.E.2d 52, 2006-Ohio-1102, at ¶ 9; State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1. In hearing such motions, trial courts assume the role of trier of fact and are in the best position to resolve factual disputes and to evaluate witnesses credibility. State v. Burnside,100 Ohio St.3d 152, 797 N.E.2d 71, 2003-Ohio-5372, at ¶ 8; State v.Mills *Page 4 
(1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Appellate courts must accept a trial court's factual findings so long as competent and credible evidence supports those findings. State v. Metcalf (1996),111 Ohio App.3d 142, 145, 675 N.E.2d 1268; State v. Harris (1994),98 Ohio App.3d 543, 546, 649 N.E.2d 7. Appellate courts must then review de novo a trial court's application of the law to those facts. Book, supra at ¶ 9; State v. Williams (1993), 86 Ohio App.3d 37, 41, 619 N.E.2d 1141. With these principles in mind, we turn to the case at bar.
 {¶ 9} The pivotal question is whether the deputies possessed the authority to enter appellee's home. Law enforcement officers are not permitted to violate the sanctity of a person's home without a well-settled, cognizable reason to intrude. See Rowan V. United StatesPost Office Dept. (1970), 397 U.S. 728, 737, 25 L.Ed.2d 736,90 S.Ct. 1484; also see State v. Rettig (Feb. 3, 1992), Henry App. Nos. 7-91-14 7-91-15. Appellant first contends that R.C. 2935.032(A)(2)(c), which refers to police separating a domestic violence victim from the perpetrator and conducting interviews of each, gave the deputies the authority to enter the home to talk to appellee. We disagree.
 {¶ 10} R.C. 2935.032 involves law enforcement agency "arrest policies," not specific duties on the part of law enforcement officers. The statute that arguably allowed the deputies to enter the home and to arrest appellee is R.C. 2935.03 (B)(1) (3) which provides for the arrest and detention of a suspect whom the police have reasonable cause to believe has committed domestic *Page 5 
violence. We are not persuaded that provision justified the intrusion in this instance, however.
 {¶ 11} First, R.C. 2935.03 does not give law enforcement carteblanche authority to disregard constitutional principles. SeeCleveland v. Morales, Cuyahoga App. No. 81083, 2002-Ohio-5862, at ¶ 24 (concerning Miranda warnings). The prosecution must ground the deputies' warrantless entry into appellee's home on some sort of constitutional justification. Second, law enforcement officers must have some "reasonable cause" to believe that domestic violence has been committed. R.C. 2935.03(B)(1). An officer has reasonable cause to believe domestic violence has been committed when, inter alia, the officer receives trustworthy information from the victim or views the offense being committed. Id. at (B)(3)(a)(ii) (iii). In this case, Deputy Steele did not observe any act of domestic violence and Ms. Peters expressly told him that appellee never struck her. In the absence of any articulable facts to contradict Ms. Peters to indicate to the deputies that a crime had been committed, the deputies did not have "reasonable cause" to that believe a domestic violence crime had been committed.
 {¶ 12} Appellant's second justification for the warrantless entry is rooted in the Constitution. Specifically, appellant argues that the deputies had (1) probable cause to enter and (2) exigent circumstances existed to warrant entry into the home. We disagree. *Page 6 
 {¶ 13} The Fourth Amendment to the United States Constitution guarantees the rights of people "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures[.][2]
(Emphasis added.) The touchstone of Fourth Amendment jurisprudence is that searches and seizures must be "reasonable." See Wilson v.Arkansas (1995), 514 U.S. 927, 931, 131 L.Ed.2d 976, 115 S.Ct. 1914;New Jersey v. T.L.O. (1985), 469 U.S. 325, 337, 83 L.Ed.2d 720,105 S.Ct. 733; also see AL Post 763 v. Ohio Liquor Control Comm. (1998),82 Ohio St.3d 108, 111, 694 N.E.2d 905. The question of whether a peace officer's warrantless entry into a home is reasonable requires a careful analysis of the sequential and consequential events leading up to and including the entry. State v. Huff (Jun. 10, 1999), Highland App. No. 98CA23; State v. Russell (Apr. 29, 1998), Summit App. Nos. 18206 
18207, unreported.
 {¶ 14} Appellant argues that the deputies' entry into appellee's home was reasonable because they had "probable cause" to believe domestic violence was being committed.[3] We disagree. *Page 7 
To determine probable cause, courts look to the totality of the circumstances and whether those circumstances would warrant a prudent man to believe that a suspect committed, or was committing, an offense.Beck v. Ohio (1964), 379 U.S. 89, 91, 13 L.Ed.2d 142, 85 S.Ct. 223;Gerstein v. Pugh (1975), 420 U.S. 103, 111-112, 43 L.Ed.2d 54,95 S.Ct. 854; also see State v. Tibbetts (2001), 92 Ohio St.3d 146, 153,749 N.E.2d 226.
 {¶ 15} Here, it is uncontroverted that the deputies did not witness any domestic violence. It is also uncontroverted that Ms. Peters told them that appellee calmed down and did not hit her. No demonstrative physical evidence indicated that appellee had assaulted her and the officers could point to nothing specific why they should disbelieve her statement. Again, the trial court apparently concluded that, in light of these circumstances, appellant failed to establish probable cause. We find no error with that conclusion.
 {¶ 16} Likewise, we find no error in the trial court's conclusion that no exigent circumstances justified the warrantless entry. An exigent circumstance is one that prompts law enforcement officers to believe that either a person in the home needs immediate aid to prevent a threat to life or limb, or that immediate entry is necessary to stop the imminent loss, removal, or destruction of evidence or contraband. SeeState v. Karle (2001), 144 Ohio App.3d 125, 131, 759 N.E.2d 815;State v. Jenkins (1995), 104 Ohio App.3d 265, 269, 661 N.E.2d 806, at fn. *Page 8 
5; also see Minnesota v. Olson (1990), 495 U.S. 91, 101,109 L.Ed.2d 85, 110 S.Ct. 1684.
 {¶ 17} Here, no evidence was adduced to establish that any danger existed to either Ms. Peters or to her daughters. They were not in appellee's vicinity when the deputies arrived and nothing suggests that evidence was in danger of being destroyed.
 {¶ 18} The exigent circumstance appellant points to is Ms. Peters' comment to the deputies that appellee told her he would not be taken without a "bloody fight." Appellant cites our previous ruling inState v. Neptune (Apr. 21, 2000), Athens App. No. 99CA25, wherein we held that authorities were justified to enter a home to prevent a person from committing suicide or from harming themselves. In the case sub judice, appellant argues that deputies were justified to enter appellee's home to ensure that he would not harm himself. After our review of the record, however, we find no evidence to indicate that appellee threatened suicide or threatened to harm himself. The only arguable point is appellee's threat to fight if deputies attempted to arrest him.
 {¶ 19} We readily acknowledge that law enforcement officers routinely find themselves in tenuous situations, especially involving domestic violence incidents. A domestic violence victim may experience remorse or second thoughts concerning their contact with law enforcement authorities and their desire for the perpetrator's arrest and incarceration. Situations may arise when law enforcement officers arrive at the scene and a victim *Page 9 
then denies that any domestic violence incident occurred. However, this denial may not appear to the officers to be trustworthy. A victim's statement that denies the occurrence of criminal activity could be the result of extreme duress, coercion or a change of heart. In that event, law enforcement officers may, through their experience and observations, detect and conclude that additional investigation is warranted. Thus, each case must necessarily turn on its own unique facts and circumstances. In the case sub judice, Deputy Steele cited nothing specific as to why Peters' statement was not credible. Apparently, the trial court did not find credible the officers' reasons to disregard the victim's denial that a crime had occurred and that is well within the court's purview as the trier of fact. It is again important to note, however, that each case does turn on its unique facts. In the case at bar, had the officers discovered additional evidence of domestic violence or had the victims denial appeared to be untrustworthy, the officers could have properly entered appellee's home even absent invitation or permission. Here, however, we agree with the trial court's conclusion that the unique facts present in the case sub judice did not justify the warrantless entry.
 {¶ 20} For these reasons, we find no merit in the assignment of error and it is consequently overruled. Accordingly, we hereby affirm the trial court's judgment to suppress.
JUDGMENT AFFIRMED.
[1] Kelly Peters described herself as appellee s live-in girlfriend of the last fifteen years. It is unclear from the record whether appellant is Laura Peters' father or simply her mother's paramour.
[2] Fourth Amendment protections are applicable to the states through the auspices of the Fourteenth Amendment Due Process Clause. SeeSmith v. Maryland (1979), 442 U.S. 735, 736, 61 L.Ed.2d 220,99 S.Ct. 2577; Mapp v. Ohio (1961), 367 U.S. 643, 655, 6 L.Ed.2d 1081,81 S.Ct. 1684. Although Section 14, Article I, Ohio Constitution, offers substantially the same protections, see State v. Jaeger (Jul. 9, 1993), Washington App. No. 92CA30, we confine our analysis to federal constitutional provisions.
[3] Although the state argues "probable cause" in the text of the assignment of error, it does not really argue the issue in the body of the "argument" portion of the brief. Nevertheless, because it was included in the text of the assignment of error, we will consider it here.