[Cite as *State v. Fisher*, 2014-Ohio-3029.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13 CA 35 |
| | : | |
| JONATHAN C. FISHER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Fairfield County Court of Common Pleas, Case No. 2012-CR-304

JUDGMENT: REVERSED AND REMANDED

DATE OF JUDGMENT ENTRY: July 9, 2014

APPEARANCES:

For Plaintiff-Appellee:

GREGG MARX
FAIRFIELD CO. PROSECUTOR
JAMES A. DAVEY
239 W. Main St., Suite 101
Lancaster, OH 43130

For Defendant-Appellant:

SCOTT P. WOOD
DAGGER, JOHNSTON et al.
144 East Main St.
P.O. Box 667
Lancaster, OH 43130

*Delaney, J.*

{¶1}   Appellant Jonathan C. Fisher appeals from the March 5, 2013 Journal Entry Motion to Suppress and April 24, 2013 Judgment Entry of Sentence of the Fairfield County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   126 Wyandotte Street in Lancaster, Ohio consists of a two-story duplex divided by floor; the upstairs half is an apartment known as 126½ Wyandotte, and the downstairs half is an apartment known as 126 Wyandotte.  The front of the duplex consists of a large porch with a small enclosure containing two doors, the left marked "126½" and the right marked "126."  The rear of the duplex contains one back door and a back inside staircase that comes down to a "foyer-like" area.  The visible staircase is connected to the upstairs apartment (126½).

{¶3}   Shannon Al-Bataineh and her husband Raed Al-Bataineh live in the upstairs apartment (126½).  Appellant, who is Shannon's brother, lives in the downstairs apartment (126).

*An Allegation of Domestic Violence*

{¶4}   This case arose on July 11, 2012, around 9:18 p.m., when a female called 911 stating a man with an ax was chasing another man down Wyandotte Street.  Ptl. Eggleston of the Lancaster Police Department was the first to arrive at the duplex and the scene was quiet.  Eggleston knocked at 126 and received no answer; dispatch advised the caller was associated with 126 ½.  Eggleston knocked on that door and was told to come in.  As he went upstairs, Eggleston encountered an 11- or 12-year-old girl,

crying, who stated her mother was upstairs, there had been a fight, and her mother was struck in the face.

{¶5}   Eggleston found Shannon Al-Bataineh in a bedroom, "excited" and very animated, with red marks on her face or neck.  Shannon stated appellant came into her residence and assaulted her, her husband Raed tried to intervene, and a scuffle ensued which eventually spilled outside the duplex.  Outside, appellant grabbed an ax handle and chased Raed down the street.  Shannon had no idea where Raed was now.  She told Eggleston appellant was in his apartment downstairs with their other brother, Randy Fisher, who had a warrant for his arrest.

*Identification of Two Men in the Downstairs Apartment*

{¶6}   Eggleston went downstairs and found other officers now on scene. Eggleston told Ptl. Mears to go to the rear of the duplex to make sure no one came out. Mears proceeded to the back and covered the rear door.

{¶7}   Eggleston walked around to the south side of the duplex containing an eye-level open window.  A box fan was in the window but it was possible to see through it.  Eggleston observed two men sitting in the room, one at a computer and the other watching television.  Eggleston identified himself as police and told the men to come to the door.  He heard them whisper something to the effect of "I'm not going anywhere." Eggleston repeated the command several times but the men did not comply.  He then instructed another officer on the scene, Ptl. Hambel, to bring Shannon Al-Bataineh to the window to identify the men.  Shannon pointed out appellant and her other brother, Randy Fisher.

{¶8}   In the meantime, Mears continued to watch the back of the duplex and saw what he described as "a shadow coming back and forth, which you could tell was a person," in the area of the rear staircase.   Mears advised other officers there was possibly a third person present because it was unclear whether the rear staircase was attached to the upstairs or downstairs apartment.

{¶9}   At some point Shannon Al-Bataineh filled out a "Statement of Domestic Violence" containing her handwritten description of the assault on her by appellant.  Ptl. Hambel testified it is the police department's policy if officers cannot determine what happened when investigating an allegation of domestic violence, the victim has the right to "sign charges" if the victim wants the alleged offender arrested.  If police can then find the alleged offender, that person is immediately arrested upon the victim's written affidavit.  If the alleged offender cannot be found, an arrest warrant is obtained.  Hambel testified police may take any action to apprehend the alleged offender, including forcing entry into a residence to effectuate an arrest.

{¶10} Eggleston testified Shannon told him Randy Fisher had "a warrant" and he confirmed the existence of "a warrant" with dispatch.  Hambel testified he believed this to be a "traffic warrant" but he was not sure.

*Forced Entry into the Downstairs Apartment*

{¶11} Eggleston next requested permission from the duty officer, Lt. Wilson, to force entry into the downstairs apartment.  He told Wilson they had a signed domestic violence affidavit, a confirmed warrant, eyewitness identification of the alleged domestic violence offender, eyewitness identification of the subject of the warrant, and a possible

third person in the apartment. Wilson reportedly gave permission to officers to force entry into the downstairs apartment.

{¶12} Eggleston testified he kicked the front door in and was the first to enter the apartment.

{¶13} Hambel testified he was directly behind Eggleston during entry. He said the door was locked, but then officers "were able to access a key" which fit in the lock but didn't turn. However, they were now able to open the door without "major force;" the door itself "just kind of came open."

{¶14} Upon entry, Eggleston discovered Randy Fisher sitting to Eggleston's left on a couch, and appellant in a chair. He ordered them both to the floor at gunpoint. Both men were cuffed and secured. Hambel performed a protective sweep of the apartment, checking other rooms, closets, the basement, and under beds in case anyone else was present. He testified he was only looking for persons, in areas a person might be found, as a safety precaution. He didn't find anyone but did spot an ax handle, without a head, inside the door of a bedroom. He also observed a large bag of marijuana and individual empty plastic baggies. Hambel told Eggleston "You're going to want to see this" and showed him the ax handle, marijuana, and a small safe which Hambel said contained a "bunch of money."

{¶15} At that point Eggleston contacted the Fairfield County Major Crimes Unit. Officers of the local hospital also arrived to help secure the scene. Eggleston and a detective then sought and obtained a search warrant for the apartment.

*Officers' Testimony Regarding Decision to Enter Apartment*

{¶16} At the suppression hearing, Hambel testified officers forced entry into the downstairs apartment because they had a report of domestic violence, a signed affidavit from the victim, and identification of the offender inside the downstairs apartment. The warrant for Randy Fisher was also a factor. Hambel stated no exigent circumstances otherwise existed.

{¶17} Eggleston testified entry was based upon Shannon's domestic violence allegation and the offender inside the apartment; Randy Fisher's "active arrest warrant;" uncertainty as to the whereabouts of the second domestic violence victim (Raed Al-Bataineh) and the possibility he was inside the downstairs apartment; and Mears' observation of a possible third person inside the apartment. Eggleston later clarified the possible presence of a third person did not justify entry into the apartment but did justify the protective sweep during which the contraband was spotted.

*Indictment, Suppression Hearing, and Plea of No Contest*

{¶18} Appellant was charged by indictment with one count of trafficking in marijuana within 1000 feet of a school pursuant to R.C. 2925.03(A)(2) and R.C. 2925.03(C)(3)(d), a felony of the second degree [Count I], and one count of possession of marijuana pursuant to R.C. 2925.11(A) and R.C. 2925.11(C)(3)(d), a felony of the third degree [Count II]. Count I contained a forfeiture specification pursuant to R.C. 2981.02(A)(2) relating to $3,009.00 constituting proceeds derived from, acquired through, or used in commission of the drug abuse offense.

{¶19} Appellant entered pleas of not guilty and filed a motion to suppress all evidence discovered as a result of law enforcement's entry into and search of his

residence. Appellee responded with a motion in opposition and a suppression hearing commenced before the trial court on October 29, 2012 and January 7, 2013. On March 5, 2013, the trial court journalized its Journal Entry Motion to Suppress overruling appellant's motion.

{¶20} On April 5, 2013, appellant appeared before the trial court and entered a plea of no contest to Count II, possession of marijuana. Pursuant to agreement, appellee dismissed Count I and the accompanying forfeiture specification, although appellant agreed to forfeit the $3,009 cash to the Fairfield County Major Crimes Unit as part of his sentence upon Count II. The trial court thereupon sentenced appellant to a prison term of 24 months, a fine of $500 plus court costs, and a 1-year operator's-license suspension.

{¶21} Appellant now appeals from the decision of the trial court overruling his motion to suppress and from the Judgment Entry of Sentence.

{¶22} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶23} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

**ANALYSIS**

{¶24} Appellant argues in his sole assignment of error the trial court should have granted his motion to suppress. We agree.

*Standard of Review*

{¶25} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332,

713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶26} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

*Fourth Amendment Analysis*

{¶27} In the instant case, appellant argues the trial court applied the wrong test to the findings of fact and incorrectly decided the ultimate or final issue raised by the motion to suppress. The trial court found law enforcement's entry in the downstairs apartment justified by Shannon Al-Bataineh's allegation of domestic violence and the "arrest warrant" for Randy Fisher.

{¶28} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The exigent-circumstances exception has been recognized in situations of hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, and risk of danger to the police and others. *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir.1996). The government may not intrude into areas where legitimate expectations of privacy exist.

{¶29} In determining whether the Fourth Amendment protects against a search, "the rule that has emerged * * * is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz,* 389 U.S. at 361 (Harlan, J., concurring). See *Rakas v. Illinois*, 439 U.S. 128, 143–144, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Williams*, 73 Ohio St.3d 153, 166–167, 652 N.E.2d 721 (1995).

{¶30} The issue in this case is whether any exception to the warrant requirement exists permitting entry into appellant's apartment. We conclude no such exception exists.

*Warrant for Randy Fisher Does Not Support Entry*

{¶31} First, with regard to the warrant for Randy Fisher, we note no evidence exists in the record of what type of warrant this was. Hambel testified it may have been a "possible traffic warrant." (T. 44). Nor is there any evidence Randy Fisher lived in the downstairs apartment. For our purposes, Randy Fisher is therefore merely a third person present in appellant's apartment.

{¶32} Assuming *arguendo* an "arrest warrant" did exist for Randy Fisher, it is axiomatic that for Fourth Amendment purposes, a felony arrest warrant "founded on probable cause implicitly carries with it the limited authority to enter a dwelling *in which the suspect lives* when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 602-603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). We find *Payton* inapplicable because Randy Fisher is not a resident of the apartment.

{¶33} In *Steagald v. United States*, 451 U.S. 204, 222, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the United States Supreme Court held absent exigent circumstances or consent, police officers cannot lawfully search for the subject of an arrest warrant in a third person's home without first obtaining a search warrant. To enter a third party's residence to effectuate an arrest warrant on the party's guest, police must first obtain a search warrant for the residence. *Id.* Police were required to obtain a search warrant prior to entering appellant's home to execute an arrest warrant for Randy Fisher.

{¶34} Appellee cites *State v. Pinson*, 2nd Dist. Montgomery No. 20927, 2005-Ohio-4532, as authority for the proposition law enforcement may enter a residence where they have probable cause to believe the subject of an arrest warrant to be. *Pinson* is inapposite, though, because the person challenging the entry in that case is the subject of the arrest warrant, not the homeowner. *Pinson* holds the arrestee's status in the residence as an overnight guest does not overcome the authority conferred upon law enforcement by the existence of an arrest warrant. Id., 2005-Ohio-4532 at ¶ 20.

{¶35} The privacy interest in the instant case, however, is asserted by the homeowner. The importance of this distinction was explored in *U.S. v. Underwood*, 717 F.2d 482, 484 (9th Cir.1983):

> The right of a third party *not* named in the arrest warrant to the privacy of his home may not be invaded without a search warrant, *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). But this right is personal to the home owner and cannot be asserted vicariously by the person named in the arrest warrant. *See Steagald v. United States,* 451 U.S. at 218–19, 101 S.Ct. at 1650–51; *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 424–25, 58 L.Ed.2d 387 (1978). "[D]efendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." *United States v. Salvucci,* 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980).

{¶36} More relevant to the instant case is *State v. Howard*, in which police observed the subject of a felony arrest warrant through a window inside the appellant's residence. 75 Ohio App.3d 760, 600 N.E.2d 809 (4th Dist.1991). The Fourth District cites *Payton* and *Steagald* in its analysis, concluding police needed a search warrant to enter the appellant's residence to apprehend the subject of the arrest warrant. Id., 769. "[T]he fact that police possess an arrest warrant and are attempting to arrest a suspect does not, standing alone, permit the police to make a nonconsensual, warrantless entry into a third-party's residence to search for the suspect." Id.

{¶37} We therefore conclude the existence of any arrest warrant for Randy Fisher does not overcome the Fourth Amendment's warrant requirement and does not provide a basis for entry into appellant's apartment.

*Domestic Violence Allegations Do Not Support Entry*

{¶38} The question remains whether any exigent circumstances extinguished the need for a search warrant and we turn to the allegation of domestic violence by Shannon Al-Bataineh. A report of domestic violence alone does not justify a warrantless entry and the state must still establish, under the facts and circumstances of the case, an exception to the warrant requirement applies. *State v. DeLong*, 4th Dist. Ross No. 06CA2920, 2007-Ohio-2330, ¶ 11 [finding warrantless entry not justified by any exception to warrant requirement where officers didn't witness domestic violence or any evidence establishing danger to purported victim].

{¶39} Domestic violence allegations sometimes give rise to an "emergency aid" exception to the search warrant requirement. The "emergency aid" exception to the warrant requirement has been described as a subset of exigent circumstances. *State v.*

*Gooden*, 9th Dist. Summit No. 23764, 2008-Ohio-178, ¶ 6, appeal not allowed, 118 Ohio St.3d 1434, 2008-Ohio-2595, 887 N.E.2d 1203. "[T]he emergency aid exception allows officers to enter a dwelling without a warrant and without probable cause when they reasonably believe, based on specific and articulable facts, that a person within the dwelling is in need of immediate aid." Id., citing *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

{¶40} The application of exigent circumstances to domestic violence investigations is not without limitation. The Ohio Supreme Court found "[e]xigent circumstances justify a warrantless arrest into a residence by police when police are there pursuant to an emergency call reporting domestic violence and where the officers hear sounds coming from inside the residence which are indicative of violence." *State v. Applegate*, 68 Ohio St.3d 348, 1994-Ohio-356, 626 N.E.2d 942, syllabus. Following *Applegate*, courts of appeal have found application of the emergency aid exception requires an officer to have a "reasonable belief that it was necessary to investigate an emergency threatening life and limb." *Gooden,* supra, 2008-Ohio-178 at ¶ 7, citing *Applegate*, 68 Ohio St.3d at 350. In this case, the record is devoid of any such evidence.

{¶41} Appellant and Randy Fisher were seated inside appellant's apartment, watching television or at a computer, refusing police entry. This activity does not support any exception to the warrant requirement. No domestic violence was in progress; no emergency threatened life and limb. There are no facts to establish why police could not "have stood guard at the exits to [the apartment] and achieved the same results without violating the sanctity of the residence" by obtaining a search

warrant. *State v. Huff,* 4th Dist. Highland No. 98 CA 23, 1999 WL 402222 (Jun. 10, 1999) at *5.

{¶42} Appellee argues Raed Al-Bataineh may have been in appellant's apartment requiring aid. We note officers and the trial court relied upon Shannon's allegation and written statement for entry into the residence. Eggleston did cite the possibility of Raed in appellant's apartment as one reason for entry, but conceded Raed was last seen running down Wyandotte Street and no evidence indicated he had returned to the duplex or was inside appellant's apartment requiring aid. (T. 108-109). The record is thus devoid of specific and articulable facts that a person within the dwelling was in need of immediate aid. *Mincey*, supra, 437 U.S. at 392.

{¶43} Appellee directs us to *State v. Martin*, finding objectively reasonable exigent circumstances existed for law enforcement to enter an open garage to arrest an alleged domestic violence offender. 12th Dist. Madison No. CA2004-07-026, 2005-Ohio-3511, appeal not allowed, 107 Ohio St.3d 1425, 2005-Ohio-6124, 837 N.E.2d 1209. We note, though, the Twelfth District found exigent circumstances on the basis of factors completely absent from the instant case: the offender was visibly agitated, clutching a young child, wearing a bloody shirt determined to be evidence of the offense, and standing in an open garage visible to anyone who walked by. Id. at ¶ 10-12. We have already found no such exigent circumstances exist in the instant case, and Eggleston testified entry was not based upon any concern for destruction of evidence. (T. 104).

{¶44} We are charged with independently determining, without deference to the trial court's conclusion, whether the facts before us on the record meet the appropriate

legal standard.   *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

We must conclude the facts in this record do not support any exception to the warrant

requirement which would justify the warrantless entry into appellant's apartment.   The

trial court therefore should have granted appellant's motion to suppress.

{¶45} Appellant's sole assignment of error is sustained.

### CONCLUSION

{¶46} Appellant's sole assignment of error is sustained, the judgment of the

Fairfield County Court of Common Pleas is reversed, and this matter is remanded for

further proceedings consistent with this opinion.

By:  Delaney, J. and

Gwin, P.J.

Wise, J., dissenting.

*Wise, J., dissenting*

{¶47} I respectfully dissent from the majority decision in this matter.

{¶48} A case such as this presents an arduous challenge to attempt to balance conflicting legal principles. On the one hand, as the United States Supreme Court has rightly held, " '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" (Brackets sic.) *Payton v. New York* (1980), 445 U.S. 573, 589-590, 100 S.Ct. 1371, 63 L.Ed.2d 639, quoting *Silverman v. United States* (1961), 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734. On the other hand, the Ohio General Assembly, in formulating a statutory response to the widespread problem of domestic violence, has articulated a "preferred arrest policy" in such cases*. See City of Cleveland v. Morales*, 8th Dist. Cuyahoga No. No. 81083, 2002-Ohio-5862, ¶ 16. I note R.C. 2935.03(B)(1) permits peace officers to "arrest and detain until a warrant can be obtained any person who the peace officer has reasonable cause to believe" committed an offense of violence, including domestic violence, as long as there is "reasonable ground to believe" the offense was committed. Furthermore, R.C. 2935.03(B)(3)(a)(i) provides that a written statement of domestic violence, such as the one Shannon executed at the scene in the case sub judice, constitutes reasonable grounds to believe the offense of domestic violence has been committed. Yet I am cognizant that "R.C. 2935.03 does not give law enforcement *carte blanche* authority to disregard constitutional principles." *State v. DeLong*, 4th Dist. Ross No. 06CA2920, 2007-Ohio-2330, ¶ 11, citing *Morales, supra*, at ¶ 24.

**{¶49}** The majority opinion recites, inter alia, *Howard* and *Steagald*, both of which address the critical question of a warrantless police entry into a defendant's home based on the additional presence of a suspect named in an arrest warrant.[1] I find the rule of *Howard* and *Steagald* herein inapplicable. The case sub judice entails the confluence of the arrest warrant for appellant's brother Randy and the domestic violence report provided by Shannon under R.C. 2935.03(B)(3). I find the combination of these two factors, in light of Ohio's preferred arrest policy regarding domestic violence, justified the officers' entry and arrest of appellant visibly inside his residence and the subsequent cursory protective search of the premises, even in the absence of exigent circumstances. I therefore further find the issue of Randy's status as a resident or overnight guest to be moot.

**{¶50}** I would affirm and hold the trial court did not err in denying the motion to suppress under the narrow facts and circumstances of this case.

_____
HON. JOHN W. WISE

---

[1] The majority indicates it is assuming arguendo that an arrest warrant actually existed for appellant's brother Randy Fisher in the present case. *See* Opinion at paragraph 32. However, appellant does not deny the existence of such an arrest warrant (*see* Appellant's Brief at 8-9); I therefore find it unnecessary to base any warrant analysis on an assumption.